IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LAURA GARRETT AND MICHAEL GARRETT, SR., INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF MICHAEL GARRETT, JR., DECEASED | § § § § § § | CASE NO. <u>5:21-cv-00803</u> |
| Plaintiffs, | § § | JURY TRIAL DEMANDED |
| vs. | § § | |
| COMAL COUNTY, MARK W. REYNOLDS, INDIVIDUALLY AND AS THE COMAL COUNTY SHERIFF, OFFICER ORLANDO MENDOZA ,OFFICER ERIK ROMO, OFFICER GONZALEZ, OFFICER, OZUNA, EMT ERICA ROSALES, AND SERGEANT THOMAS GARZARECK | § § § § § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs Christopher Laura Garrett and Michael Garrett, Sr., Individually and as Personal Representatives of Michael Garrett, Jr., deceased, complaining of Defendants, Comal County, Mark W. Reynolds, Individually and as Sheriff of the Comal County Sheriff's Office ("Reynolds"), Officer Orlando Mendoza #3393 ("Mendoza") individually, Officer Erik Romo ("Romo") individually, Officer Gonzalez #3308 ("Gonzalez"), Officer Ozuna # #3367 ("Ozuna"), EMT Erica Rosales ("Rosales") and Sergeant Thomas Garzareck #3387 ("Garzareck"), individually, (hereinafter referred to as Defendants) and for cause of action, would respectfully show unto the Court and jury the following

## I.  NATURE OF THE ACTION

1.      This is a civil rights action pursuant to 42 U.S.C. §1983 filed by Plaintiffs Christopher Laura Garrett and Michael Garrett, Sr., Individually and as Personal Representatives of Michael Garrett, Jr., deceased, against Mark W. Reynolds, the Sheriff of Comal County, and various employees of the Comal County Sheriff's Department and County Jail (Sergeant Thomas Garzareck, Officer Mendoza, Officer Romo, Officer Gonzalez, and Officer Ozuna) for the death of Michael Garrett, Jr., in violation of his individual rights under the Fourteenth Amendment of the United States Constitution. Michael Garrett, Jr., was denied adequate medical treatment at the Comal County Jail on December 7, 2019, in violation of his right to Due Process under the Fourteenth Amendment to the United States Constitution. The actions alleged in this Complaint are of such a nature as to shock the conscience, and amount to arbitrariness, maliciousness, extreme recklessness, conscious and deliberate indifference, and/or wanton oppressiveness.

2.      Plaintiffs are entitled to recover individually and as representatives for the Estate of Michael Garrett, Jr., to the full extent applicable by law under Texas Wrongful Death Statute, Texas Civil Practice and Remedies Code section 71.001, et seq., Texas Survival Statute, Texas Civil Practice and Remedies Code section 71.021, and all other applicable laws.

3.      In the alternative, Plaintiffs bring this action under the Texas Tort Claims Act (TTCA). Pursuant to Texas Civil Practice and Remedies Code 101.021, immunity from suit has been waived and, thus, Plaintiffs have a viable cause of action against Comal County as specified below. Pursuant to the TTCA's election of remedies requirement, Plaintiffs' state causes of action are brought solely against Comal County as specified below, as opposed to the deputies, individually.

## II.  PARTIES

### a.    Plaintiffs

4.      Plaintiff, Laura Garrett, individually and as personal representative of the Estate of Michael Garrett, Jr., is a citizen of the United States and a resident of New Braunfels, Texas. Laura Garrett is the mother of Michael Garrett, Jr., decedent, and brings this wrongful-death action as applied under 42 U.S.C. §§1983 and pursuant to the Texas Wrongful Death Statute, TEX. CIV. PRAC. & REM. CODE ANN. §71.001, et seq., Texas Survival Statute, TEX. CIV. PRAC. & REM. CODE ANN. §71.021, and all other applicable laws complaining of various acts listed below and for Michael's wrongful death and survival cause of action and as a parent of Michael Garrett, Jr., who at the time of his death was a resident of New Braunfels, Texas.

5.      Plaintiff, Michael D. Garrett, Sr., individually and as personal representative of the Estate of Michael Garrett, Jr., is a citizen of the United States and a resident of Ohio. Michael Garrett, Sr., is the father of Michael Garrett, Jr., decedent, and brings this wrongful-death action as applied under 42 U.S.C. §1983 and pursuant to the Texas Wrongful Death Statute, TEX. CIV. PRAC. & REM. CODE ANN. §71.001, et seq., Texas Survival Statute, TEX. CIV. PRAC. & REM. CODE ANN. §71.021, and all other applicable laws complaining of various acts listed below and for Michael's wrongful death and survival cause of action and as a parent of Michael Garrett, Jr., who at the time of his death was a resident of New Braunfels, Texas.

### b.    Entities

6.      Defendant Comal County is a political subdivision of the State of Texas. The Comal County Sheriff's Office is a servient political agency of Comal County. The commissioners court is the governing body of the county, and the county judge is the presiding officer of the county commissioners court. Tex. Const. Art. V, Sec. 18; Tex. Loc. Gov't Code § 81.001.

7.     The Comal County Commissioners Court funds and operates Comal County Sheriff's Office, while Comal County Judge, Sherman Krause, serves as the County's chief administrator.

8.     Mark W. Reynolds is the Comal County Sheriff. The Sheriff is the chief law enforcement officer for the county. He is responsible for operating the county jail and controlling all prisoners within the jail.

9.     Comal County Judge Sherman Krause, the Commissioners Court, and Sheriff Mark W. Reynolds, are responsible for the implementation of the Sheriff Department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.

10.     Comal County may be served by and through its registered agent, County Judge Sherman Krause, at the Comal County Commissioners' Court at 100 Main Plaza, New Braunfels, Texas 78130.

11.     Additional service is being made on District Attorney Jennifer Tharp at 199 Main Plaza, Suite 2007, New Braunfels, Texas 78130.

12.     Defendant Comal County Sheriff Mark W. Reynolds may be served at the Sheriff's Admin Office, 3000 IH 35 S, New Braunfels, Texas 78130.

### c.     *Individual Defendants*

13.     Defendant Comal County Correctional Officer Orlando Mendoza #3393 is an individual residing in the State of Texas, and at all times material herein was a duly appointed Corrections Officer acting under the color of law, under the color of the statutes, ordinances, regulations, policies, customs, and usages of his employer Comal County Sheriff's Office

14.     Defendant Officer Erik Romo is an individual residing in the State of Texas, and

at all times material herein was a duly appointed Corrections Officer, acting under the color of law, under the color of the statutes, ordinances, regulations, policies, customs, and usages of his employer Comal County Sheriff's Office.

15.     Defendant Officer Gonzalez #3308 is an individual residing in the State of Texas, and at all times material herein was a duly appointed Corrections Officer, acting under the color of law, under the color of the statutes, ordinances, regulations, policies, customs, and usages of his employer Comal County Sheriff's Office and can be located at 3003 W. San Antonio Street, New Braunfels, TX

16.     Defendant Detention Officer Ozuna #3367 is an individual residing in the State of Texas, and at all times material herein was a duly appointed officer acting under the color of law, under the color of the statutes, ordinances, regulations, policies, customs, and usages of his employer Comal County Sheriff's Office and can be located at 3005 W. San Antonio Street, New Braunfels, Texas.

17.     Defendant EMT Erica Rosales is an individual residing in the State of Texas, and at all times material herein was acting under the color of law, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Comal County and can be located at 3005 W. San Antonio Street, New Braunfels, Texas.

18.     Defendant Comal County Detention Center Sergeant Thomas Garzareck #3387 is an individual residing in the State of Texas, and at all times material herein was a duly appointed Corrections Officer, acting under the color of law, under the color of the statutes, ordinances, regulations, policies, customs, and usages of his employer Comal County Sheriff's Office and can be located at 3005 W. San Antonio Street, New Braunfels, Texas.

### III.  JURISDICTION AND VENUE

19.     Jurisdiction exists in the Court pursuant to 28 U.S.C. §§1331 and 1343 as this action is brought under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent, Michael Garrett, Jr., by constitutional and statutory provisions.

20.     Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 20 U.S.C. §1367 to adjudicate pendent claims arising under the laws of the State of Texas.

21.     Venue is proper in this Court because the causes of action occurred within the Western District of Texas, San Antonio Division.

## IV.  FACTUAL ALLEGATIONS

22.     On or about DECEMBER 7, 2019, OFFICER P. AKERS arrested MICHAEL GARRETT, JR., and charged him with Possession of Controlled Substance less than one gram. While in transport to the jail, MICHAEL GARRETT, JR., became erratic and started sweating profusely.

23.     MICHAEL GARRETT, JR., arrived at the Comal County Detention Center for booking at or about 11:50 PM. (Booking No. 354136; Inmate #638009). Roughly one hour and 32 minutes later, MICHAEL GARRETT, JR., was found unresponsive on the floor with his skin appearing purple. After being pronounced brain dead and taken off life support at Christus Santa Rosa, MICHAEL GARRETT, JR., died on DECEMBER 8, 2019.

24.     After pulling MICHAEL GARRETT, JR., and his friends over on the night of DECEMBER 7, 2019, OFFICER AKERS suspected that MICHAEL GARRETT, JR., had ingested methamphetamine. He found an empty bag with white residue near MICHAEL GARRETT, JR.'s seat. - According to Officer Akers' report, Michael admitted to placing the baggie near the seat belt buckle. When asked whether Garrett had swallowed any of the

methamphetamines, he did not answer but "appeared he wanted to tell something". Garrett refused to answer any additional questions. Soon after exiting the vehicle, MICHAEL GARRETT, JR., became noncompliant and began to sweat profusely and act erratically, thereby confirming his suspicions.

25.     As MICHAEL GARRETT, JR., and JOHN GARCES were transported to COMAL COUNTY JAIL, MICHAEL GARRETT, JR.'s behavior became increasingly indicative of drug use. Upon his arrival to the jail, "Gun Gate" detention staff commented on MICHAEL GARRETT, JR.'s shaking and asked whether he was nervous or had anxiety. Staff also asked if he was sick or if there was a reason he was sweating so profusely.

26.     Although MICHAEL GARRETT, JR., denied drug use, this is not uncommon during booking or medical intake. This lack of cooperation is commonly a combination of being under the influence and preventing oneself from being charged with a greater offense. Police officers are trained to recognize characteristics of drug use for this reason. Although he either failed to respond or shook his head "no" to questions of whether he had ingested drugs, his behavior confirmed his methamphetamine consumption.

27.     When MICHAEL GARRETT, JR., arrived for booking at or about 11:50 PM, instead of providing him with medical care, OFFICERS MENDOZA and ROMO took punitive action. Upon questioning MICHAEL GARRETT, JR., SERGEANT GARZARECK noted that he was very agitated, constantly moving his head and looking around while continuing to sweat profusely—each of which are strong indications of a drug use/overdose. SERGEANT GARZARECK had briefly seen MICHAEL GARRET, JR., an hour before this interaction and noted that he had deteriorated mentally since then. Medical care was still withheld.

28.     The officers should have noted his symptoms and transported him to a hospital for

overdose treatment. Instead, MICHAEL GARRETT, JR., was placed in a Wrap restraint. Noncompliant behavior from someone under the influence of methamphetamine often results from the effects of the drug rather than a desire to disobey an officer's commands. When considered alongside MICHAEL GARRETT, JR.'s, behavior, this showed the need for immediate medical attention from the moment he arrived at COMAL COUNTY DETENTION CENTER and the officers' failure to provide medical care.

29.     Wrap restraints are designed to stop conflict, control a subject, and allow for immediate medical care as needed. Another purpose of the restraint is to provide safe and secure methods of transportation for an individual in the field. However, when a restrained subject complains of and/or exhibits medical concerns, medical attention should be provided immediately.

30.     Additionally, it is common knowledge in the police community that an inmate suspected of a drug overdose should never be put into a Wrap restraint. Forcible restraints, such as the Wrap system, have a history of inducing asphyxia in those under the influence of methamphetamine.

31.     When a person is physically restricted in a situation of mechanical asphyxia and is unable to breathe, their oxygen drops. It is also understood that when oxygen demand goes up and oxygen supply goes down, the heart becomes very susceptible to arrhythmias. This is precisely why health concerns such as respiratory distress, elevated body temperature, suspected drug behavior, emotional distress, and profuse sweating should prevent an inmate from ever being placed in a Wrap restraint.

32.     The state of being restrained is not in and of itself enough to compromise a person's respiration. However, when paired with medical conditions that arise from an overdose, this improper usage of a Wrap restraint will lead to death in most cases. The Wrap restraint prevents

oxygen levels from rising because the restraint impairs the mechanical process of inhaling and exhaling, which is one of many reasons that officers are trained in use of force and recognition of drug influences.

33.     At most, the Wrap restraint system should have been used as a temporary means to provide MICHAEL GARRETT, JR., much needed medical care. As applied to MICHAEL GARRETT, JR., the Wrap restraint posed a grave danger of asphyxiation as the officers knew or should have known.

34.     Despite this knowledge, SERGEANT GARZARECK and OFFICERS MENDOZA and ROMO forced MICHAEL GARRETT, JR., into the restraint and took him to a violent solitary cell at 12:50 PM. Instead of constantly monitoring MICHAEL GARRETT, JR., they abandoned him for 32 minutes. With legs-shackled and handcuffs in place, MICHAEL GARRET, JR., stopped breathing.

35.     By 1:22 AM, when OFFICER GONZALEZ happened to glance at MICHAEL GARRETT, JR.'s, cell while transporting another inmate, he finally noticed MICHAEL GARRETT, JR.'s, purple coloring and unresponsiveness—clear indications of asphyxia. OFFICER GONZALEZ called for medical assistance. At 1:23 AM, EMT ROSALES called for an RN and called 911. MICHAEL GARRETT, JR.'s, handcuffs and Wrap restraint were removed and he was put on the floor. OFFICER MCGINNIS arrived and attempted CPR measures on MICHAEL GARRETT, JR.'s, but by that time he had no pulse and had already stopped breathing.

36.     At 1:31 AM New Braunfels Fire Department responded and attended to MICHAEL GARRETT, JR. By 1:51 AM, EMS departed to Christus Santa Rosa Hospital with MICHAEL GARRETT, JR. EMS was unable to get an ET tube and was bagging him upon arrival to the hospital.

37.    Upon arrival to the hospital, MICHAEL GARRETT, JR., remained unresponsive with a palpable pulse. His diagnosis was anoxic brain injury, an injury that occurs when the brain is deprived of oxygen.  On the day of his death, MICHAEL GARRETT, JR., was lacking all cranial nerve function except for spontaneous breaths.

38.    After being pronounced brain dead and taken off life support at Christus Santa Rosa Hospital, MICHAEL GARRETT, JR., died on December 8, 2019, at 5:27 PM.

## V.  PLAINTIFFS' CIVIL RIGHTS CLAIM

39.    The Civil Rights Acts, as codified at 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

40.    42 U.S.C. § 1983 authorizes suits against state and local government officials who violate a person's constitutional rights. Pretrial detainees have a constitutional right not to have confining officials treat their serious medical needs with deliberate indifference, under the Due Process Clause of the Fourteenth Amendment. Unlike convicted prisoners, whose rights to constitutional essentials like medical care and safety are guaranteed by the Eighth Amendment, pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic needs. It is well-settled in the law that a state official's episodic act or omission violates a pretrial detainee's due process rights to medical care if the official acts with subjective deliberate indifference to the detainee's rights.

41.    A county can be held liable for an episodic act or omission under Section 1983 if

a county employee acts with subjective deliberate indifference. A prison official acts with subjective indifference if: (1) he knows that an inmate faces a substantial risk of serious bodily harm; and (2) he disregards that risk by failing to take reasonable measures to abate it.

## PLAINTIFFS' FIRST CLAIM:
## CIVIL RIGHTS CLAIM AGAINST THE OFFICERS

42.     Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein. The individual officers Mendoza, Romo, Gonzalez, Ozuna, EMT Rosales, Garzarck and unknown other Comal County Jail personnel, as applicable, intentionally, and with deliberate indifference, deprived Michael Garrett, Jr., of his clearly established constitutional rights, including, but not limited to:

    a.   His right to reasonably safe conditions of confinement; and

    b.   His right to receive proper medical services for any serious medical conditions

43.     Each identified officer had a duty to ensure that Michael received proper medical care, and safety from harm, yet failed to do so. The individual officer's actions were more than negligent as Michael had a readily apparent medical issue. Yet, each individual officer consciously chose not to ensure that Michael received adequate medical care or monitoring. These officers, acting pursuant to the policies, customs and practices of Defendant Comal County and through these actions, proximately caused the deprivation of Michael's rights to due process of law subjecting him to a period of incarceration under unduly painful, horrifying, and dangerous conditions resulting in his death. The actions of the officers were singularly, or in combination, a legal cause of death to Michael Garrett, Jr.

44.     Plaintiffs bring a claim against the Defendant Officers Mendoza, Romo, Gonzalez, Ozuna, EMT Rosales and Garzarck, individually, pursuant to 42 U.S.C. §1983. At all times

relevant, the Defendant Officers were acting under color of law.

45.    Plaintiffs would show that the Defendant Officers Mendoza, Romo, Gonzalez, Ozuna, EMT Rosales and Garzarck, denied Michael Garrett, Jr., his right to be free from deprivation of life without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.  Moreover, Michael Garrett, Jr., had a due process right to life and liberty under the United States Constitution. The actions of the officers deprived him of that right.

46.    Michael Garrett, Jr., was in serious need of medical attention and treatment and protection from harm, as was well known and documented by the officers. Nonetheless, the officers willfully and maliciously placed and kept Michael incommunicado in the Comal County Jail. The officers refused to properly monitor and protect Michael Garrett, Jr from harm.

47.    The officers, acting with deliberate indifference and subjective recklessness to the clear needs of Michael Garrett, Jr, of which they had subjective knowledge, made a conscious decision, pursuant to the policies, practices or customs of Comal County or their inadequate training, not to monitor Michael Garrett, Jr properly, not to acquire proper medical assessment of his obvious serious medical condition. The need for more or different training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights to pretrial detainees, that Defendant Comal County can reasonably be said to have been deliberately indifferent toMichael Garrett, Jr.'s serious medical needs. Given Michael Garrett, Jr.'s deteriorating condition and circumstances surrounding his arrest, which were known to the officers, coupled with Michael's actions while in jail, the individual officers deliberately disregarded the serious risk of harm.

a.    *Officer Akers*

48.    OFFICER AKERS was informed that OFFICER DOWELL located a clear plastic

baggie in the backseat area where MICHAEL GARRETT, JR., was sitting. Inside the baggie, OFFICER AKERS located a white crystalized substance inside of it. Based on OFFICER AKERS's experience, he immediately believed the substance to be methamphetamine, which was later confirmed after field testing with a NARK II methamphetamine test kit. According to OFFICER AKERS, MICHAEL GARRETT, JR., admitted to him that he placed the baggie near the seat buckle. OFFICER AKERS moved Michael in his patrol vehicle.

49.     OFFICER AKERS told OFFICER KORY to look in the H-E-B parking lot to see if the driver or any passengers had tossed any illegal narcotics out of the window prior to being pulled over. OFFICER KORY found nothing, which reinforced his suspicion that MICHAEL GARRETT, JR., had ingested the methamphetamine.

50.     When they arrived at the jail, OFFICER AKERS said it was his belief that MICHAEL GARRETT, JR., had swallowed methamphetamines because he was "sweating and acting very strange."

51.     OFFICER AKERS admitted that the white baggie was large, and that MICHAEL GARRETT, JR., had swallowed an unknown amount of methamphetamine, yet he did nothing to provide medical aid to MICHAEL GARRETT, JR., during the early stages of his overdose.

### b.     *Sergeant Garzareck*

52.     SERGEANT GARZARECK was the supervisor assigned during much of the interaction with MICHAEL GARRETT, JR.  SERGEANT GARZARECK was, perhaps, in the best position to render aid to MICHAEL GARRETT, JR., and deliberately indifferent for failing to do so.

53.     In his statement, SERGEANT GARZARECK made frequent references to MICHAEL GARRETT, JR.'s behavior: "He was very agitated, moving his head around and

looking around constantly. He only made fleeting eye contact with me as I spoke with him and shifted his posture around constantly. He was profusely sweating. He seemed to be suffering an anxiety episode. I had briefly passed by IM Garrett more than an hour earlier and saw that he had noticeably degenerated mentally since then."

54.     SERGEANT GARZARECK called for medical, but EMT ROSALES asked to take MICHAEL GARRETT, JR.'s vitals and he responded "no." She gave up on the medical screening soon after.

55.     In his own words, SERGEANT GARZARECK said, "because of his agitation, intoxication level, and unknown mental condition, I advised the CO's to prepare the inmate to go into a violent cell." Instead of transporting MICHAEL GARRETT, JR., to a hospital where he could receive the care he needed, SERGEANT GARZARECK ordered that MICHAEL GARRETT, JR., be placed in restraints and left alone to deteriorate further. MICHAEL GARRETT, JR., was shaking, sweating, and acting in the manner of someone under the influence of a narcotic, yet he was provided with no medical treatment while under the supervision of officers trained to recognize indicators of a drug overdose.

56.     Despite witnessing the obvious decline in MICHAEL GARRETT, JR.'s, health, SERGEANT GARZARECK either failed to recognize MICHAEL GARRETT, JR.'s, obvious overdose symptoms or recognized them and repeatedly denied him medical treatment.

### c.     Officer Gonzalez

57.     GONZALEZ observed MICHAEL GARRETT, JR.'s, purple complexion and inability to breath. GONZALEZ failed to conduct routine checks of MICHAEL GARRETT, JR., rather instead was in the process of transporting another inmate and simply happened to glance into MICHAEL GARRETT, JR.'s, cell when he found him unconscious.

58.     Detention staff informed GONZALEZ of their concern for MICHAEL GARRETT, JR.'s shaking and nervous behavior, thereby placing GONZALEZ on notice of the grave situation unfolding in MICHAEL GARRETT, JR.'s, solitary confinement. The detention staff believed MICHAEL GARRETT, JR.'s, behavior, attitude, and physical signs of distress required immediate attention.

### d.     *Officer Mendoza*

59.     MENDOZA called GARZARECK to come to the change out room to help him and ROMO. MENDOZA, along with ROMO, forced MICHAEL GARRETT, JR., into the Wrap restraint and left him unattended.

### e.     *Officer Romo*

60.     ROMO, along with MENDOZA forced MICHAEL GARRETT, JR., into the Wrap restraint, and left him unattended.

### f.     *Officer Ozuna*

61.     OZUNA was called to the gun gate to assist with the arrival of GARCES and MICHAEL GARRETT, JR. OZUNA observed MICHAEL GARRETT, JR., shaking, sweating, and breathing hard. OZUNA said MICHAEL GARRETT, JR., was kept in handcuffs due to his strange behavior (shaking, looking around constantly). OZUNA assisted GONZALEZ with getting MICHAEL GARRETT, JR., to the wall for "officer and inmate safety." When MENDOZA arrived, OZUNA collected MICHAEL GARRETT, JR.'s clothing and personal items and returned to his normal duties.

### g.     *EMT Rosales*

62.     EMT ROSALES completed intake for MICHAEL GARRETT, JR. EMT ROSALES noted that he was diaphoretic (sweating) and fidgety. Because MICHAEL

GARRETT, JR. apparently refused to answer her medical questions (as is typical for someone under the influence), EMT ROSALES made the unconscionable decision to give up on completing a medical examination. MICHAEL GARRETT, JR. indicated that he had a substance abuse history, but apparently would not be more specific with EMT ROSALES. It should be noted that whenever MICAHEL GARRETT, JR, was asked about substance use, he responded "NO COMMENT". According to EMT ROSALES, "PI is not speaking sentences and will only say "no comment," or No" or shake his head." Moreover, he would "only answer selective questions".

63.      EMT ROSALES did not see MICHAEL GARRETT, JR. again until 1:23 AM, by which time Michael was unresponsive and suffering from asphyxia. Had EMT ROSALES paid attention to MICHAEL GARRETT, JR. 's, symptoms and reviewed his reason for arrest, she would have been put on notice of Michael's critical condition in time to give him the medical care that he needed.

64.      Pretrial detainees have a constitutional right to not to have confining officials treat their serious medical needs with deliberate indifference. A county acts with objective deliberate indifference if it promulgates (or fails to promulgate) a policy or custom, despite the known or obvious consequences that constitutional violations would result. A prison official acts with subjective indifference if: (1) he knows that an inmate faces a substantial risk of serious bodily harm; and (2) he disregards that risk by failing to take reasonable measures to abate it.

65.      Plaintiffs assert that Defendant Officers Mendoza, Romo, Gonzalez, Ozuna, EMT Rosales and Garzarck, and other unknown Comal County Jail personnel were deliberately indifferent to Michael's serious medical needs and that these violations of Michael's constitutional rights were the result of Comal County's policies, practices or procedures. Comal

County, implemented policies, customs and practices with deliberate, callous and conscious indifference to the constitutional rights of Michael, failed to ensure the implementation of practice of any policies, procedures and practices necessary to provide constitutionally adequate medical or protective services to Michael during his incarceration in the Comal County jail. The challenged actions or inactions involve recurring situations presenting an obvious potential for the deprivation of pretrial detainees' constitutional rights to occur in the future.

66.    Michael Garrett, Jr., was subjected to a substantial risk of serious harm and the above officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and then actually drew such an inference.

67.    Michael was allowed to lie on the floor of his cell, confined in a restraint without supervision. Just over an hour after Michael was left in the cell, he was found unresponsive and transported by ambulance to the hospital.

68.    The officers' actions and inaction demonstrates evidence of extreme deliberate indifference on the part of Comal County Jail staff. The evidence shows the Comal County Jail staff knew of a substantial medical risk to Michael because of his deteriorating condition since the time of his arrest. The jail officials were deliberately indifferent to the risk Michael faced because the officials were actually aware of risk, yet consciously disregarded the risk of harm to Michael. The treatment of abandonment of Michael in a cell while restrained in the Wrap was "so grossly incompetent, inadequate or excessive as to shock the conscience or be intolerable to fundamental fairness".

69.    The conduct of the officers in question was reckless, shocks the conscience, and amounts to deliberate indifference. As applied to Michael Garrett, Jr., the Wrap restraint posed a grave danger of asphyxiation as the officers knew or should have known Wrap restraints are

designed to stop conflict, control a subject, and allow for immediate medical care as needed. Another purpose of the restraint is to provide safe and secure methods of transportation for an individual in the field. However, when a restrained subject complains of and/or exhibits medical concerns, medical attention should be provided immediately.

70.     A cursory inspection of Michael Garrett, Jr.'s, behavior would alert any trained officer or jailer that unless Michael Garrett, Jr., received medical attention in a timely and prescribed fashion, his health would likely deteriorate.

71.     While under the care and custody of Comal County Jail and Defendants Garzareck, Romo, Gonzalez, Mendoza, Ozuna, and Rosales, Michael Garrett, Jr., suffered a medical emergency. Comal County employees were deliberately indifferent in their supervision and provision of medical care to Michael Garrett. Defendants left him restrained and insufficiently monitored him after seeing clear indicators of a drug overdose which caused, or was a significant contributing factor, to Michael Garrett, Jr.'s death.

72.     Despite this knowledge, Sergeant Garzareck and Officers Mendoza and Romo forced Michael into the restraint and took him to a violent solitary cell at 12:50 PM. Instead of constantly monitoring Michael while he was in the Wrap restraint, they abandoned him for 32 minutes. With legs-shackled and handcuffs in place, Michael stopped breathing.

73.     Defendant Deputies consciously disregarded a substantial risk of harm to innocent persons through their use of restraint and failure to monitor that amounted to conduct that shocks the conscious, and amounts to arbitrariness, maliciousness, extreme recklessness, conscious and deliberate indifference, and/or wanton oppressiveness.

74.     The conduct, acts, and omissions of the officers proximately caused Michael's

death and the damages of the Plaintiffs.

## PLAINTIFFS' SECOND CLAIM:
## CIVIL RIGHTS CLAIM AGAINST COMAL COUNTY & POLICY MAKERS

75.     Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

76.     Defendant Comal County, acting under color of law and acting pursuant to the practices, customs and policies of Comal County deprived Michael Garrett, Jr. of rights and privileges secured to him by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by other laws of the United States. Defendant failed to provide for Michael Garrett, Jr.'s basic needs by failing to provide safe and proper confinement and not providing for his medical needs, in violation of 42 U.S.C. § 1983 and related provisions of federal law, and in violation of the cited constitutional provisions.

77.     Michael Garrett, Jr. had a right, secured by the Due Process Clause of the Fourteenth Amendment to be secure in his basic human needs, including medical care and safety, free from conditions of confinement that were not reasonably related to a legitimate governmental objective, the right to be free from indifference to his medical and mental health needs, the right to be free from any impermissible punishment before conviction and sentencing, and to be free from having his life taken while in confinement without due process of the law.

78.     At all times relevant hereto, Defendant Comal County had a constitutional obligation under the Fourteenth Amendment to provide adequate medical care and protection to those they had incarcerated including, but not limited to, Michael Garrett, Jr.'s case.

79.     The deputies in question were employed by the Comal County Sheriff's Office and were acting under color of law.

80.     The individual deputies committed constitutional violations as against Michael Garrett, Jr., as set forth above.

81.     These constitutional violations proximately caused and did cause Michael Garrett, Jr.'s death and the damages of the Plaintiffs.

82.     Defendant, acting through official policies, practices, and customs and with deliberate, callous and conscious indifference to the constitutional rights of Michael Garrett, Jr., failed to implement or practice any policies, procedures and practices necessary to provide constitutionally adequate medical services or to protect Michael from harm.

83.     As discussed above, this lack of proper policies and training was a moving force and proximate cause of the death of Michael Garrett, Jr.

84.     Comal County and its policy makers, including Sheriff Reynolds, actually knew or should have known, prior to the incident, of inadequate training and policies and/or customs on the use of restraints, application of medical assistance to persons in the custody of CCSO, and proper monitoring practices.

85.     Comal County, its policy makers, and Sheriff Reynolds were deliberately indifferent to these inadequate training and policies and customs.  As discussed above, Comal County, its policy makers, and Sheriff Reynolds knew of these inadequacies in advance of this incident.  It was apparent and obvious that the likely consequences of not enacting or adopting adequate procedures and training would work to deprive members of the public of constitutional rights.  Comal County, its policy makers, and Sheriff Reynolds failed to modify these policies or institute sufficient training until after the incident made the basis of this lawsuit.

86.     The inadequacies involving training, policies and customs were moving forces

leading to the constitutional violations as set forth above.  At all times relevant to this incident, the Defendant officers Mendoza, Romo, Gonzalez, Ozuna, EMT Rosales, and Garzareck were acting pursuant to the training, customs, practices, and policies of Comal County and the CCSO regarding the use of restraints, application of medical assistance to persons in the custody of CCSO, and proper monitoring practices.

87.     The above-mentioned policies and the Defendants' failure to employ proper policies and training were the proximate cause and moving forces behind the violations of Michael Garrett, Jr.'s constitutional rights and the unnecessary death of Michael Garrett, Jr.

88.     Defendants Comal County and Sheriff Reynolds are liable under 42 U.S.C. § §1983 for the reasons set forth above.

### PLAINTIFFS' THIRD CLAIM:
### SUPERVISORY LIABILITY: DEFENDANT SHERIFF MARK REYNOLDS

89.     Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

90.     The Texas Local Government Code provides that "the sheriff of each county is the keeper of the county jail. The sheriff shall safely keep all prisoners committed to the jail by a lawful authority, subject to an order of the proper court." TEX. LOC. GOV'T CODE ANN. § 351.041(a). The sheriff is without question the county's final policymaker in the area of law enforcement. Thus, a governmental entity like Comal County can be held accountable for the illegal or unconstitutional actions of the Sheriff of Comal County. He clearly set the goals for the County and determined how those goals would be achieved. He possessed the final authority to establish the policy with respect to the policies and training of all Comal County Sheriff Office deputies.

91.     As Chief Law Enforcement Officer, Defendant Sheriff Reynolds had a duty to ensure that officers in the Comal County Sheriff's Office were adequately trained in the use of restraints and monitoring and/or supervision of persons in the care and custody of the CCSO.  He also had a duty to ensure appropriate policies were in place to guide these officers.

92.     For the reasons explained above, Sheriff Reynolds knew of problems with training and policies regarding the restraints and monitoring yet did not modify those policies or institute appropriate training until after this incident. Sheriff Reynolds knew or should have known that the training of deputies and that use of restraint policies were inadequate for some time prior to this incident.  As discussed above, the Deputies in question engaged in constitutional violations under the Fourteenth Amendments.

93.     Defendant Sheriff Reynolds's subordinate deputies, Mendoza, Romo, Gonzalez, Ozuna, and Garzarck, were under his supervision when they violated the constitutional rights of Michael Garrett, Jr.

94.     Defendant Sheriff Reynolds implemented and/or failed to adopt adequate policies, failed to train, and failed to appropriately supervise his subordinates on the use of restraints and proper monitoring.  It was apparent and obvious that the likely consequences of not enacting or adopting adequate procedures and training in these areas would work to deprive members of the public of constitutional rights. The implementation of these policies or failure thereof served as a proximate cause and the moving force behind the violation of the constitutional rights and the death of Michael Garrett, Jr.

95.     Sheriff Reynolds failed to act and acted with deliberate indifference. Sheriff Reynolds knew and should have known that such particular omissions in these policies and the training program would cause his subordinates to violate the constitutional rights of members of

the public they encounter, but nevertheless chose to allow these policies and inadequate training to remain in place until after the incident made the basis of this lawsuit.

96.     Defendant Sheriff Reynolds is liable under 42 U.S.C. §1983 for the reasons set forth above.

## VI.     PLAINTIFFS' STATE CAUSES OF ACTION

97.     Pleading in the alternative, Plaintiffs bring their state cause of action (which this Court has jurisdiction over pursuant to 20 U.S.C. §1367) pursuant to Texas Civil Practice and Remedies Code Section 101.021, as the Texas Tort Claims Act (TTCA) waives Defendants' sovereign immunity for claims involving personal injury, death, or property damage caused by the negligent operation or use of tangible personal property by CCSO's employees, if those employee(s) would be personally liable to Plaintiffs under Texas law.

98.     Pursuant to the TTCA's election of remedies requirement, Plaintiffs' state cause of action is brought solely against Comal County, as opposed to the officers individually.

99.     Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

100.     Pleading in the alternative, the deputies in question, while acting in their scope of employment with Comal County, negligently used tangible personal property (a Wrap), which proximately caused the death of Michael Garrett, Jr., and the damages to the Plaintiffs.  The deputies would have been personally liable to the Plaintiffs under Texas law.

101.     Plaintiffs timely provided notice under the TTCA.  Alternatively, Comal County had timely, actual notice of this claim and the circumstance of this case .

102.     No exception to the waiver of immunity bars this claim because no exception

applies.

### VII.    ADDITIONAL CLAIMS

103.    To the extent that the Defendants seek to dismiss or limit the Garretts' legal claims, then the Garretts have been denied due process of law as federal, state, and local laws, including laws pertaining to immunity, have effectively denied the Garretts an adequate opportunity to seek adequate compensation for the state-occasioned deprivation of their son's life. *See County of Sacramento v. Lewis*, 523 U.S. 833, 840 n. 4 (1998).

104.    The application of differing standards of liability, under section §1983 , to the claims of the Garretts as well as differing liability and compensation schemes, would also violate the substantive and procedural due process and equal protection rights of the Garretts, under the Fourteenth Amendment.

### VIII.    DAMAGES & COSTS, ALL DEFENDANTS

105.    Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

106.    Plaintiffs bring a survival claim against the Defendants on behalf of the Estate of Michael Garrett, Jr.  Additionally, Plaintiffs, the parents of Michael Garrett, Jr., assert individual wrongful death claims against the Defendants.

107.    Laura and Michael Garrett, Sr., as the parents of 18-year-old Michael Garrett, Jr., suffered and will continue to suffer significant emotional pain and anguish as a result of the death of their son.

108.    Michael Garrett, Jr., was eighteen (18) years old when he died; he was in good health, with a reasonable life expectancy of living at least 67 more years to age 84.

109.    Defendants' acts and/or omissions were a proximate cause of the following injuries and damages suffered by Plaintiffs:

a.    Actual damages;

b.    Loss of affection, consortium, comfort, financial protection, affection and care;

c.    Pain and suffering and mental anguish suffered by Michael Garrett prior to his death;

d.    Mental anguish and emotional distress suffered by Plaintiffs;

e.    Loss of quality of life;

f.    Loss of service;

g.    Medical and funeral expenses;

h.    Exemplary and punitive damages;

i.    Pursuant to 42 U.S.C. §1988, and other applicable laws, reasonable attorney's fees for preparation and trial of this cause of action, and for its appeal, if required, and for expert fees;

j.    Costs of court;

k.    Prejudgment interest; and

l.    Post judgment interest

## IX.    CONDITIONS PRECEDENT

110.    All conditions to Plaintiffs' recovery have been performed or have occurred.

## X.    JURY DEMAND

111.    Plaintiffs hereby request a jury trial on all issues so triable pursuant to the Seventh Amendment of the United States Constitution.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to

appear and answer herein; that upon final trial hereof Plaintiffs have and recovers judgment from Defendants; actual damages, exemplary damages, pre-judgment and post-judgment interest at the legal rate, costs of court, attorney's fees; and such other and further relief, both general and special, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

**LAW OFFICES OF MALONEY & CAMPOLO**

By: */s/ Tim Maloney*_____
Tim Maloney
State Bar No. 12887380
Email:  tmaloney@maloneyandcampolo.com

Eric Campolo
State Bar No. 24094579
Email: ecampolo@maloneyandcampolo.com

926 S. Alamo Street
San Antonio, Texas 78205
Telephone (210) 922-2200
Facsimile (210) 923-1313

**ATTORNEYS FOR PLAINTIFFS**