IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **LAURA GARRETT and MICHAEL GARRETT, SR., individually and as representatives of the Estate of Michael Garrett, Jr., Deceased,** § § § § | | |
| *Plaintiffs*, § | | |
| § | | |
| v. § | | |
| § | | |
| **COMAL COUNTY; MARK W. REYNOLDS, individually and as the Comal County Sheriff; OFFICER ORLANDO MENDOZA; OFFICER ERIK ROMO; OFFICER GONZALEZ; OFFICER OZUNA; EMT ERICA ROSALES; and SERGEANT THOMAS GARZARECK,** § § § § § § § § § § | § | CASE NO. 5:21-CV-00803-JKP-RBF |
| *Defendants*. § | | |

## THE INDIVIDUAL COMAL COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE JASON K. PULLIAM:

Defendants Comal County Sheriff's Office ("CCSO") Corrections Officer Orlando Mendoza ("CO Mendoza"), CCSO Corrections Officer Erik Romo ("CO Romo"), CCSO Corrections Officer Alberto Gonzalez ("CO Gonzalez"), CCSO Corrections Officer Ashley Ozuna ("CO Ozuna"), CCSO Corrections Sergeant Thomas Garzareck ("Sergeant Garzareck"), and Comal County Sheriff Mark W. Reynolds, in his individual capacity ("Sheriff Reynolds") (collectively, the "Individual Defendants"), file this Motion for Summary Judgment pursuant to Rule 56 of the Fed. R. Civ. P. In support thereof, the Individual Defendants would respectfully show as follows:

# I.
## INTRODUCTION

1.  Laura Garrett and Michael Garrett, Sr., individually and as representatives of the Estate of Michael Garrett, Jr., Deceased, Plaintiffs in the above-styled and numbered cause ("Plaintiffs"), assert claims under 42 U.S.C. § 1983 against the Individual Defendants arising from Michael Garrett, Jr.'s ("Garrett") December 7, 2019, detainment at the Comal County Jail. Plaintiffs allege that each of the Individual Defendants violated Garrett's constitutional rights to adequate medical care and to be free from excessive force.

2.  Garrett's drug-related death is tragic. The Individual Defendants, however, cannot be held responsible for fatal decisions Garrett made that were, under all of the circumstances, not obvious to government employees. For the reasons set forth below, the Individual Defendants are entitled to summary judgment under the doctrine of qualified immunity.

# II.
## STATEMENT OF MATERIAL FACTS

3.  Pursuant to Local Rule CV-7(c), the Individual Defendants are submitting an appendix that outlines the material facts relied upon to support this Motion for Summary Judgment.

# III.
## SUMMARY JUDGMENT EVIDENCE

4.  In support of this Motion for Summary Judgment, the Individual Defendants rely upon the following summary judgment evidence:[1]

| | |
|---|---|
| Exhibit A | Affidavit of Major Adrian Delgado |
| Exhibit B | Affidavit of Ian Davis |
| Exhibit C | Christus Santa Rosa Health System Discharge Summary |
| Exhibit D | Garrett's Certificate of Death |
| Exhibit E | Affidavit of Alberto Gonzalez |
| Exhibit F | Affidavit of Michael Martinez |
| Exhibit G | Affidavit of Ashley Ozuna |
| Exhibit H | Affidavit of Orlando Mendoza |

---

[1] Exhibits A, B, and I contain sub-exhibits. Each corresponding affidavit contains a list of all sub-exhibits.

| | |
|---|---|
| Exhibit I | Affidavit of Nelda Delgado |
| Exhibit J | Affidavit of Thomas Garzareck |
| Exhibit K | Thomas Garzareck Deposition Excerpts |
| Exhibit L | Inadvertently Omitted |
| Exhibit M | Affidavit of Julian Rodriguez |
| Exhibit N | Affidavit of Ryan Gonzales |
| Exhibit O | Texts |
| Exhibit P | Laura Garrett Deposition Excerpts |
| Exhibit Q | New Braunfels Fire Department Records |
| Exhibit R | Michael Garrett, Sr., Deposition Excerpts |
| Exhibit S | New Braunfels Fire Department Records |
| Exhibit T | Excerpts from Phoenix House Medical Records |
| Exhibit U | Excerpts from San Patricio County Sheriff's Office Arrest Records |
| Exhibit V | Excerpts from Coastal Plains Community Center Medical Records |
| Exhibit W | Excerpts from Hill Country MHDD Center |
| Exhibit X | Affidavit of Joshua Smerk |
| Exhibit Y | Stacy Sinner Deposition Excerpts |
| Exhibit Z | Sheriff Mark Reynolds Deposition Excerpts |
| Exhibit AA | EMT Erica Rosales Deposition Excerpts |
| Exhibit BB | Chun Chiang Deposition Excerpts |
| Exhibit CC | The WRAP Application Manual |

## IV.
### SUMMARY JUDGMENT STANDARD

5. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue of material fact, and the moving party demonstrates it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. An issue is not "genuine" when there is nothing more than "some metaphysical doubt as to the material facts." *Matsushita Elect. Indust. Co. v. Zenith Radio,* 475 U.S. 547, 586 (1986).

6. In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 378 (2007). Factual controversies are resolved in favor of the nonmoving party, "but only where there is an actual controversy, that is, when both parties have submitted evidence of

contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380. "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted).

## V.
### QUALIFIED IMMUNITY STANDARD

7. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

8. To determine whether qualified immunity applies, courts conduct the two-part analysis set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), as modified by *Pearson*, 555 U.S. 223 (2009). That is, to defeat summary judgment, a plaintiff must offer sufficient evidence to raise a genuine dispute of material fact regarding (1) whether a public official violated the plaintiff's constitutional rights; and (2) whether such actions were objectively unreasonable in the light of clearly established law at the time of the conduct. *See Poole v. City of Shreveport*, 691 F.3d 624,

627 (5th Cir. 2012); *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). Courts may address these prongs in either order. *See Pearson*, 555 U.S. at 236.

9. "[O]vercoming qualified immunity is especially difficult in excessive force cases." *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019). To prevail on a claim for excessive force, Plaintiff must show "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (internal quotation marks and citation omitted); *see also Poole*, 691 F.3d at 628 (citation omitted). If Plaintiff cannot establish all of these elements, qualified immunity applies.

## VI.
### ARGUMENTS AND AUTHORITIES

10. Pursuant to 42 U.S.C. § 1983, Plaintiffs claim that the Individual Defendants violated Garrett's constitutional rights to adequate medical care and to be free from excessive force. Because Plaintiffs are unable to show that Garrett's constitutional rights were violated under these claims, the Individual Defendants are entitled to summary judgment. Moreover, even if this Court finds that Garrett's rights were violated, summary judgment is nonetheless appropriate because Plaintiffs are unable to show that the rights asserted were clearly established or that the Individual Defendants' actions were objectively unreasonable.

**A.  The Individual Defendants Are Entitled to Qualified Immunity on Plaintiffs' Denial of Medical Care Claims**

   **i.  Plaintiffs Cannot Establish a Constitutional Violation**

11. Both pretrial detainees and convicted inmates are entitled to and may not be denied adequate medical care. *See Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). To prevail on a claim for denial of medical care, a pretrial detainee must show that the jail official had

***subjective knowledge*** of a serious risk of harm to him,[2] but responded with deliberate indifference to that risk. *See id*. Deliberate indifference is shown when an official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, ***and he must also draw the inference***. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A state actor's failure to alleviate a significant risk that he should have perceived, but did not, ***does not rise to the level of deliberate indifference***. *See McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003); *Farmer*, 511 U.S. at 838.

12. An incorrect diagnosis by medical personnel or medical malpractice ***does not amount to deliberate indifference***. *See Domino v. Texas Dept. of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent ***do not amount to deliberate indifference*** and do not divest officials of qualified immunity. *See Hernandez ex rel Hernandez v. Texas Dept. of Protective and Reg. Svcs*., 380 F.3d 872, 883 (5th Cir. 2004); *Alton v. Texas A&M Univ*., 168 F.3d 196, 201 (5th Cir. 1999).

13. Throughout his intake at the Comal County Jail, Garrett repeatedly denied having ingested drugs.[3] Garrett never requested to go to a hospital, and never requested medical attention. To the contrary, he repeatedly rebuffed medical personnel's attempt to provide medical care, or even take his vital signs.[4] Garrett selectively answered officers' and EMT Rosales' questions, demonstrating that he was capable of understanding them.[5] Specifically, Garrett answered "yes"

---

[2] A serious medical need is one for which treatment has been recommended or the need is so apparent that even laymen would recognize that care is required. *See Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006).
[3] *See* Exhibit A-18 at 02:15; *see also* Exhibit A-4 at 01:15 through 06:45, 12:00; *see also* Exhibit I-1, pp. CCSO003736, CCSO003737, CCSO003738; Exhibit I-2. Although the NBPD officer who talked with Michael during his arrest (Sergeant Akers) expressed a concern that Michael had ingested drugs prior to his arrest, Sergeant Akers never passed along this information to Comal County employees. *See* Exhibit B-2 at 43:10, 17:20, 45:30, 1:17:15; *see also* Exhibit B-3 at 11:35; Exhibit B-4 at 15:35; Exhibit A-4 at 00:01.
[4] *See* Exhibit I-1; *see also* Exhibit I-2; Exhibit 1-3.
[5] *See* Exhibit I-1.

when officers and medical staff asked him whether he had anxiety and "no" when questioned on drug ingestion.[6] Garrett also asked the officers questions on his own volition and even made an affirmative request for some water (which the officers brought him).[7]

14. Initially, on coming to and entering into the Jail, Garrett was fidgeting and appeared nervous.[8] Eventually, when the officers instructed him to remove his underwear, as part of the strip search process, Garrett became sweaty, was breathing hard, fidgeting and became more non-compliant with the officers' directives.[9] However, at no point were the Individual Defendants subjectively aware that Garrett was facing a DRE or needing medical attention beyond what was and could be provided at the jail.[10] In fact, EMT Rosales—one of the medical professionals on the scene—specifically determined that Garrett was having an anxiety attack, which was consistent with his answers to intake questioning.[11] On that basis, it was determined that Garrett was not in need of immediate medical attention.[12]

15. Moreover, on several occasions, medical staff attempted to conduct a medical screening on Garrett.[13] Garrett selectively answered medical screening questions.[14] He stated that

---

[6] *See* Exhibit A-10 at 02:15; *see also* Exhibit I-1, p. CCSO003737.
[7] *See* Exhibit A-4 at 09:50, 10:30, 16:10; *see also* Exhibit A-49 at 03:10, 05:25; Exhibit A-12 at 01:40 through 10:45.
[8] *See* Exhibit A-8; *see also* Exhibit A-9; Exhibit I-1, pp. CCSO003737, CCSO003738; Exhibit I-2.
[9] *See* Exhibit A-12 at 01:40; *see also* Exhibit A-13; Exhibit A-15; Exhibit A-16; Exhibit A-17; Exhibit A-19 at 04:12, 04:55; Exhibit A-50 at 00:01.
[10] *See* Exhibit A, ¶9; *see also* Exhibit E, ¶¶6, 8; Exhibit F, ¶¶3, 5; Exhibit G, ¶¶4, 6; Exhibit H, ¶¶7, 9; Exhibit J, ¶¶4, 7; Exhibit N, ¶6.
[11] *See* Exhibit A-52 at 02:22; *see also* Exhibit AA, p. 47, ll. 5-10, p. 64, ll. 21-25. Moreover, Dr. Chiang (Rosales' expert) as well as Plaintiffs' medical expert both testified that Garrett's symptoms were consistent with an anxiety attack. *See* Chun Chiang Deposition Excerpts, attached hereto as Exhibit BB (hereinafter "Exhibit BB"), p. 52, ll. 3-16, p. 72, ll. 11-22; *see also* Exhibit Y, p. 46, l. 24 – p. 47, l. 9, p. 65, l. 1 – p. 67, l. 3.
[12] *See* Exhibit E, ¶¶6, 7; *see also* Exhibit F, ¶¶3, 4; Exhibit G, ¶¶4, 5; Exhibit H, ¶¶9, 10; Exhibit J, ¶15;
[13] *See* Exhibit A-13; *see also* Exhibit A-18 at 01:20; Exhibit A-52 at 00:30; Exhibit I-1; Exhibit I-2.
[14] *See* Exhibit A-13; *see also* Exhibit A-18 at 01:20; Exhibit A-52 at 00:30; Exhibit I-1; Exhibit I-2.

he had not ingested any drugs and refused to answer any questions regarding substance abuse.[15] Critically, Garrett refused medical staff's attempts to check his vitals.[16]

16. Based on the facts and circumstances surrounding Garret's intake, the evidence establishes that the Individual Defendants were not subjectively aware that Garrett faced a substantial risk of serious harm.[17] *See, e.g., Roberts v. Lessard,* 841 Fed. Appx. 691, 694 (5th Cir. Jan. 20, 2021) (no deliberate indifference when officers observed plaintiff sweating, slurring speech and having trouble controlling movement because no evidence that "Defendants actually drew the inference that [plaintiff] was suffering from a medical condition that presented a serious risk of harm").[18] Indeed, ***Plaintiffs' own expert witness agrees*** that the COs did not have actual subjective awareness that Garrett had taken drugs.[19] Ultimately, the failure to realize that Garrett had ingested a lethal amount of methamphetamine negates any claim of deliberate indifference.[20]

---

[15] *See* Exhibit A-18 at 02:15; *see also* Exhibit A-4 at 01:15 through 06:45, 12:00; Exhibit I-1, pp. CCSO003736, CCSO003737, CCSO003738; Exhibit I-2.

[16] *See* Exhibit A-13; *see also* Exhibit A-18; Exhibit A-52 at 00:30; Exhibit I-1, pp. CCSO003736, CCSO003737, CCSO003738; Exhibit I-2.

[17] Further, there is no evidence in the record establishing that the New Braunfels PD arresting officers informed any of the Individual Defendants that Michael may have ingested an unknown quantity of drugs.

[18] *See also Montano v. Orange Cty.,* 2015 U.S. Dist. LEXIS 180277, at *25–26 (E.D. Tex. Apr. 13, 2015) (holding no deliberate indifference even when record contained evidence that officer "may have misdiagnosed [plaintiff] in assuming that he was intoxicated" because "subjective deliberate indifference cannot be inferred from a negligent, or even grossly negligent, response to a substantial risk of serious harm.").

[19] *See* Stacy Sinner Deposition Excerpts, attached hereto as Exhibit Y (hereinafter "Exhibit Y"), p. 40, ll. 9-23.

[20] The Individual Officers' actions were also reasonable. *See Brown*, 623 F.3d at 253 ("If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'"). Even assuming Plaintiffs' allegations—that Michael had ingested drugs prior to his arrest— the Individual Defendants repeatedly attempted to have Michael undergo a medical screening. Yet he refused. Thus, it is objectively reasonable for the Individual Officers to restrain Michael and let an intoxicated detainee to sober up, with periodic monitoring to safeguard his well-being. *See Estate of Allison v. Wansley,* 524 Fed. Appx. 963, 972 (5th Cir. May 15, 2013). As the Fourth Circuit has aptly stated:

> [The deceased inmate's] symptoms hardly distinguish him from the multitude of drug and alcohol abusers the police deal with everyday. [The deceased inmate] was found in possession of drugs while acting irrationally and slurring his speech. However, an officer could hardly be faulted under [*Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)] for believing that [the deceased inmate] needed nothing so much as to sleep it off. To accept appellant's claim would be to mandate as a matter of constitutional law that officers take all criminal suspects under the influence of drugs or alcohol to hospital emergency rooms rather than detention centers. That would be a startling step to take.

17. The Fifth Circuit's opinion in *Sims v. Griffin* is instructive. *See* 35 F.4th 945 (5th Cir. 2022). There, Qualls was arrested for public intoxication. *See id.* at 948. He was taken to the jail's detox cell where he repeatedly called out to jail staff for help, and specifically requested to go to the hospital. *See id.* Approximately 10 hours after arriving at the jail, Qualls vomited "a dark black liquid." *Id.* When officers entered the cell to clean Qualls up, he screamed in pain. *See id.* One of the officers asked if she needed to call EMS, but the other officer told her no. *See id.* Three hours later, Qualls again vomited black liquid. *See id.* While cleaning the vomit, the officers found "a small tied-off piece of bag—the kind used to hold illegal narcotics[.]" *Id.* The officers *still* did not seek medical attention. *See id.* Four hours later, Qualls vomited black liquid again. *See id.* He then cried out to the officers at least 62 times. *See id.* Five hours later, Qualls was dead. *See id.* During the entire incident, medical professionals were never called. *See id.*

18. Qualls' mother filed suit under § 1983, alleging that the officers violated Qualls' constitutional right to not have his serious medical needs met with deliberate indifference. *See id.* The district court denied the officers' motion for summary judgment on the grounds of qualified immunity because the plaintiff had offered evidence of the officers' deliberate indifference. *See id.* at 948–49. The Fifth Circuit affirmed. *See id.* at 952. It held that "a reasonable jury could conclude on the evidence at this stage that each officer knew Qualls had swallowed a bag full of drugs, vomited multiple times, screamed for help, pleaded to go the hospital, and had steadily deteriorated since his arrival at the jail." *Id.* at 952. Taken together, "a reasonable jury could find that the officers each refused to treat Qualls, ignored his cried for help, and overall evinced a wanton disregard for Qualls's serious medical needs." *Id.*

---

*Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999).

19.  The facts of this case are a far cry from *Sims*. Unlike Qualls—who screamed in pain, repeatedly asked officers to go to the hospital, and vomited black liquid multiple times—Michael never requested medical attention.[21] And unlike Qualls, Garrett's physical symptoms were limited to sweating, anxiety, heavy breathing and non-compliance with officer directives.[22] Moreover, the officers in *Sims* found a drug baggie in Qualls' vomit, strongly suggesting that he had swallowed drugs prior to his arrest. *See Sims,* 35 F.4th at 948. Here, the Individual Defendants were not confronted with definitive indicators that Garrett had taken a lethal dose of drugs. Garrett never notified the Individual Defendants that he had consumed any drugs, was having a medical emergency, nor did he request medical attention (to the contrary, he rebuffed it).[23] The Individual Defendants repeatedly asked Garrett whether he had taken drugs.[24] In response, he either denied it or ignored the officers' questions.[25] Sergeant Garzareck even spoke with Garces, who was arrested with Garrett that evening, and asked him whether Garrett had taken drugs.[26] Garces denied any knowledge of whether Garrett took drugs, but did say that Garrett suffered from anxiety.[27] Moreover, EMT Rosales, the medical staff present during Garrett's intake, concluded that he was suffering from an anxiety attack (which was consistent with Garrett's and his cousin's statements).[28] The medical experts agree that these symptoms observed by the COs are consistent with anxiety.[29]

---

[21] *See* Exhibit Y, p. 65, ll. 1-17.
[22] *See* Exhibit A-8; *see also* Exhibit A-9; Exhibit I-1, pp. CCSO003737, CCSO003738; Exhibit I-2.
[23] *See* Exhibit I-1, pp. CCSO003736, CCSO003737, CCSO003738; *see also* Exhibit I-2.
[24] *See* Exhibit A-4 at 05:00, 12:00; *see also* Exhibit A-18 at 02:15; Exhibit I-1, pp. CCSO003736, CCSO003737, CCSO003738; Exhibit I-2.
[25] *See* Exhibit A-4 at 05:00, 12:00; *see also* Exhibit A-18 at 02:15; Exhibit I-1, pp. CCSO003736, CCSO003737, CCSO003738; Exhibit I-2.
[26] *See* Exhibit A-16.
[27] *See* Exhibit A-16.
[28] *See* Exhibit A-52 at 02:22.
[29] *See* Chun Chiang Deposition Excerpts, attached hereto as Exhibit BB (hereinafter "Exhibit BB"), p. 52, ll. 3-16, p. 72, ll. 11-22; *see also* Exhibit Y, p. 46, l. 24 – p. 47, l. 9, p. 65, l. 1 – p. 67, l. 3.

20. Simply put, the officers in *Sims* were faced with countless indicators that Qualls was in the midst of a medical emergency. *See Sims,* 35 F.4th aat 948. Yet they did nothing. *See id.* In stark contrast to S*ims*, nothing in the facts and circumstances surrounding Garrett's intake and Garrett's subsequent actions/requests put the Individual Officers on notice that Garrett had ingested a lethal dose of drugs.[30] Moreover, there is no evidence to establish that the Individual Officers were ***subjectively aware*** of a substantial risk of serious harm, nor is there evidence that they consciously disregarded such a risk. Given the limited information available, and Garrett's non-compliance, the Individual Officers acted reasonably in the circumstances. What happened to Garrett was unfortunate. But was it the product of deliberate indifference? Not on this record. As a result, Garrett's right to adequate medical care was not violated and summary judgment should be granted. *See, e.g., Tamez v. Manthey*, 589 F.3d 764, 771 (5th Cir. 2009) (holding officers were not deliberately indifferent when they had no reason to know detainee had swallowed a bag of cocaine before his arrest).

**ii.   Plaintiffs Cannot Point to Clearly Established Law**

21. "To be 'clearly established'" under the second step of qualified immunity, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). This Circuit's case law clearly establishes that a denial of adequate medical care rises to the level of a constitutional violation when the medical provider "refused to treat [the detainee], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner v. Coody*, 793 F.3d 493, 498 (5th Cir. 2015).

---

[30] *See* Exhibit A, ¶9; *see also* Exhibit E, ¶¶6, 8; Exhibit F, ¶¶3, 5; Exhibit G, ¶¶4, 6; Exhibit H, ¶¶7, 9; Exhibit J, ¶¶4, 7; Exhibit N, ¶6.

22. While the Individual Defendants are unable to locate precedent that squarely governs the facts of this case, the Fifth Circuit has explicitly held that "[t]he Constitution does not require that officers always take their arrestees suspected to be under the influence of drugs or alcohol, or reported by relative to be at risk, to a hospital[.]" *Sanchez v. Young Cnty., Tex.*, 866 F.3d 274, 280 (5th Cir. 2017); *see also Tamez v. Manthey*, 589 F.3d 764, 771 (5th Cir. 2009) (holding officers were not deliberately indifferent when they had no reason to know detainee had swallowed a bag of cocaine before his arrest).[31] Because the Individual Defendants did not violate clearly established law, qualified immunity bars Plaintiffs claims.

**B. The Individual Defendants Are Entitled to Qualified Immunity on Plaintiffs' Excessive Force Claims**

23. "Running a prison is an inordinately difficult undertaking," *Turner v. Safley*, 482 U.S. 78, 84-85 (1987), and the "safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face," *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 326 (2012).

24. "To prevail on a[n] excessive force claim, a plaintiff must show (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Craig v. Martin,* 49 F.4th 404, 409 (5th Cir. 2022) (en banc) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)). Excessive force claims are "necessarily fact intensive; whether the force used is excessive or

---

[31] Cases finding a clearly established right to medical care are inapposite to the facts of this case. *See, e.g., Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (holding that officials were deliberately indifferent by failing to provide medical care when prison medical staff were actually aware of the detainee's heart condition, and the detainee presented obvious signs of serious cardiac health risks); *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003) (holding that a defendant's failure to call an ambulance for almost two hours while plaintiff lay unconscious and vomiting rises to the level of deliberate indifference); *Harris v. Hegmann*, 198 F.3d 153, 159-60 (5th Cir. 1999) (concluding that ignoring an inmate's repeated requests for medical treatment and complaints of excruciating pain satisfied the deliberate indifference standard); *Sims v. City of Jasper,* 543 F.Supp.3d 428, 442 (E.D. Tex. 2021), *aff'd by* 35 F.4th 945 (5th Cir. 2022) (reasonable jury could conclude that "officers failed to provide treatment to, and ignored the complaints of, a clearly ill inmate they knew had a history of drug use and had likely swallowed a bag of drugs").

unreasonable depends on the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam).

25. The core question is whether the Individual Defendants' use of force when placing Garrett in the WRAP Restraint was "objectively reasonable," that is, reasonable "in light of the facts and circumstances confronting [the officers], without regard to [their] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Thus, to establish that any one of the Individual Defendants violated Garrett's right to be free from excessive force, Plaintiffs must prove that a reasonable officer, with the information that the Individual Defendants had at the time of the incident, would not have used the same degree of force employed by the Individual Defendants. As explained below, the Individual Defendants did not violate Garrett's constitutional rights. And even if such a finding is made, Plaintiffs cannot establish that such a right was clearly established.

### i. None of the Individual Defendants Violated Garrett's Constitutional Right to Be Free from Excessive Force

26. To prove excessive force in violation of the Fourteenth Amendment, a pretrial detainee must show that the force purposely or knowingly used against him was "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). This inquiry "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In determining the objective reasonableness of an officer's use of force, a court may consider the following non-exclusive factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *See id.* at 400–01; *see also Holm v. Sausenhagen,* 2021 U.S. Dist. LEXIS 854, at * 9

(W.D. Tex. Jan. 5, 2021), *aff'd on other grounds in* 2022 U.S. App. LEXIS 24138 (5th Cir. Aug. 26, 2022).

27. Here, Plaintiffs cannot show that any of the Individual Defendants used excessive force on Garrett when they placed him in the WRAP Restraint. In fact, **Plaintiffs' own expert** testified that she ***did not have any concerns*** with the Individual Defendants' use of force.[32]

28. The first factor examines the relationship between the need for force and the amount of force used. *See Kingsley*, 576 U.S. at 400–01. During his detainement at the Comal County Jail, Garrett refused to answer a majority of the COs' questions.[33] After being seen by EMT Rosales at medical intake, Garrett was brought back to the "dress out" room[34], so that the COs could conduct the strip search requested by the arresting officers. In the dress out room, Garrett was instructed to remove his underwear for a routine strip search.[35] He refused.[36] After ten minutes of attempting to gain Garrett's compliance, and in combination with his refusal to permit a medical check, the decision was made to place Garrett under medical observation in a violent cell ("VC").[37] This meant that, to prevent his use of his underwear to commit suicide or otherwise injure himself, Garrett's underwear had to be removed and he had to be placed in a suicide gown.[38] The officers then directed Garrett to remove his underwear.[39] When he continued to refuse, the officers were forced to remove his underwear themselves.[40] As reflected in the body camera video, at that point,

---

[32] *See* Exhibit Y, p. 53, ll. 7-17.
[33] *See* Exhibit I-1, pp. CCSO003736, CCSO003737, CCSO003738; *see also* Exhibit I-2.
[34] This is also referred to as the Change Out room.
[35] *See* Exhibit A-49 at 05:47.
[36] *See* Exhibit A-12 at 01:40 through 10:45.
[37] *See* Exhibit A-12 at 01:40 through 10:45; *see also* Exhibit J, ¶10.
[38] *See* Exhibit J, ¶10.
[39] *See* Exhibit A-13; *see also* Exhibit A-16; Exhibit A-17; Exhibit A-19 at 04:12, 4:55; Exhibit A-50 at 00:01.
[40] *See* Exhibit A-13; *see also* Exhibit A-16; Exhibit A-17; Exhibit A-19 at 04:12, 4:55; Exhibit A-50 at 00:01.

Garrett actively resisted.[41] The officers then placed and held Garrett against the wall to demobilize him so that they could remove his underwear.[42]

29. Because the officers had been unable to conduct a complete strip search on Garrett, Sergeant Garzareck decided it was better to place him in a WRAP Restraint.[43] The force used—forcing Garrett against the wall and placing him in a WRAP Restraint on the ground—was minimal, and intended to protect Garrett and those around him.[44] Thus, the first factor weighs against excessive force.

30. The second factor examines the extent of the plaintiff's injury. *See Kingsley*, 576 U.S. at 400–01. Here, the injury that Garrett sustained in the process of being placed in the WRAP Restraint was minimal. He suffered a small laceration above his right eye.[45] When medical personnel attempted to treat this laceration, Garrett refused their help.[46]

31. The third factor assesses the officers' efforts to temper or limit the amount of force. *See Kingsley*, 576 U.S. at 400–01. Here, the Individual Officers exhibited patience in the face of Garrett persistent non-compliance.[47] When Garrett refused to remove his underwear for the strip search, the officers tried for approximately ten minutes to gain compliance.[48] The officers calmly explained that it was a necessary part of the process, it would only take a minute, they were simply trying to help him, and that Garrett would be alright.[49] They never raised their voices or became

---

[41] *See* Exhibit A-13; *see also* Exhibit A-16; Exhibit A-17; Exhibit A-19 at 04:12, 4:55; Exhibit A-50 at 00:01.
[42] *See* Exhibit A-13; *see also* Exhibit A-16; Exhibit A-17; Exhibit A-19 at 04:12, 4:55; Exhibit A-50 at 00:01.
[43] *See* Exhibit A-19 at 09:45; *see also* Exhibit J, ¶10; Exhibit K, p. 38, l. 15-p. 39, 17. Specifically, because it was unknown whether Michael was hiding any drugs or a weapon in his anal cavity, the WRAP Restraint was intended to protect Michael and those around him. *See* Exhibit J, ¶10; *see also* Exhibit K, p. 38, l. 15-p. 39, 17.
[44] *See* Exhibit J, ¶10; *see also* Exhibit K, p. 38, l. 15-p. 39, 17.
[45] *See* Exhibit A-51 at 06:13.
[46] *See* Exhibit A-51 at 06:13.
[47] *See* Exhibit A-12 at 01:40 through 10:45.
[48] *See* Exhibit A-12 at 01:40 through 10:45.
[49] *See* Exhibit A-12 at 01:40 through 10:45.

aggressive.[50] It was only when Garrett actively resisted the officers' attempts to remove his underwear that force was used (by demobilizing Garrett, placing him against the wall and eventually on the ground).[51] Therefore, the third factor militates against excessive force.

32. The fourth factor examines the severity of the security problem. *See Kingsley*, 576 U.S. at 400–01. Here, Garrett refused to remove his underwear so that officers could conduct a strip search.[52] Conducting a strip search—which is a routine part of the intake process—ensures that a detainee is not secreting drugs or weapons in their anal cavity.[53] Because Garrett physically resisted the officers' attempts to conduct a strip search, he presented a security risk to himself, Jail staff, and other inmates because there was a possibility that Garrett had access to a weapon.[54] Thus, placement in a WRAP Restraint neutralized this security threat and this factor weighs against excessive force.[55]

33. The fifth factor looks to the threat reasonably perceived by the officers. *See Kingsley*, 576 U.S. at 400–01. As explained above, given Garrett's refusal to comply with officer commands and his resistance to attempts to conduct a body search, the officers reasonably perceived a security threat; namely, whether Garrett was secreting an object that may pose a danger to the safety himself/herself and/or the security of the facility.[56]

34. The final factor asks whether the plaintiff was actively resisting. *See Kingsley*, 576 U.S. at 400–01. He was. Garrett physically resisted the officers' attempts to remove his

---

[50] *See* Exhibit A-12 at 01:40 through 10:45.
[51] *See* Exhibit J, ¶10; *see also* Exhibit K, p. 38, l. 15-p. 39, 17.
[52] *See* Exhibit A-12 at 01:40; *see also* Exhibit A-13; Exhibit A-15.
[53] *See* Exhibit A-13; *see also* Exhibit A-16; Exhibit A-17; Exhibit A-19 at 04:12, 04:55, 05:55; Exhibit A-50 at 00:01, 00:20.
[54] *See* Exhibit J, ¶10; *see also* Exhibit K, p. 38, l. 15-p. 39, 17.
[55] *See* Exhibit J, ¶10; *see also* Exhibit A-16; Exhibit A-51 at 01:45; Exhibit K, p. 38, l. 15-p. 39, 17.
[56] *See* Exhibit J, ¶10; *see also* Exhibit A-16; Exhibit A-51 at 01:45; Exhibit K, p. 38, l. 15-p. 39, 17

underwear.[57] Garrett continued to resist while the officers placed him in the WRAP Restraint.[58] Thus, the sixth factor weighs against excessive force.

35. Given the facts and circumstances surrounding the Individual Defendants, the decision to place Garrett in a WRAP Restraint was neither unreasonable nor excessive, and as a result, no constitutional violation occurred. *See, e.g., Dickerson v. Wheelen*, 2022 U.S. Dist. LEXIS 44316, at *13 (S.D. Tex. 2022) (concluding no excessive force when officers placed plaintiff "in a restraint wrap, which was objectively reasonable under the circumstances after he resisted efforts to obtain information during the booking process and repeatedly refused to cooperate or answer intake questions"); *Waddleton v. Rodriguez*, 750 Fed. Appx. 248, 251, 254-55 (5th Cir. 2018) (holding takedown was not objectively unreasonable where prisoner was verbally aggressive and "quickly turn[ed] . . . towards the officers").[59]

### ii. The Individual Defendants' Actions Were Objectively Reasonable Under Clearly Established Law

36. Under the second step of qualified immunity analysis, the "dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *see also Hill v. Carrol County, Miss.*, 587 F.3d 230, 237 (5th Cir. 2009) (restraint case). The Fifth Circuit has described the second question as "a doozy" for which the plaintiff bears a "heavy" burden to prove that the "constitutional question is beyond debate." *Morrow v. Meachem,* 917 F.3d

---

[57] *See* Exhibit A-13; *see also* Exhibit A-16; Exhibit A-17; Exhibit A-19 at 04:12, 04:55, 05:55; Exhibit A-50 at 00:01, 00:20.
[58] *See* Exhibit A-13; *see also* Exhibit A-16; Exhibit A-17; Exhibit A-19 at 04:12, 04:55, 05:55; Exhibit A-50 at 00:01, 00:20.
[59] *See also Calhoun v. Wyatt,* 2013 U.S. Dist. LEXIS 63296, at *6 (E.D. Tex. May 2, 2013) (inmate's refusal to obey officers' orders "set the stage for the use of force"); *compare Benoit v. Bordelon,* 596 Fed. Appx 264, 268 (5th Cir. 2015) (upholding finding of excessive force where officers choked a "calm, non-violent inmate" whose "hands and legs were shackled"), *with Narro v. Edwards,* 829 Fed. Appx 7, 13 (5th Cir. 2020) (per curiam) (affirming qualified immunity where officer "used a non-deadly punch to gain control of a resisting inmate").

870, 874 (5th Cir. 2019). Thus, Plaintiffs must identify a controlling precedent that "squarely governs the specific facts at issue." *Id.* at 876–77.

37. The constitutional "right" that must be clearly established is not a general right simply to be free from an unreasonable seizure. *See Manis v. Lawson*, 585 F.3d 839, 846 n.4 (5th Cir. 2009); *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1776 (2015). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity. . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* Rather, the Supreme Court has explained that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (other citations omitted)).

38. Despite their best efforts, the Individual Defendants have not located precedential case law from this Circuit that "squarely governs the specific facts at issue." *See Morrow*, 917 F.3d at 876–77. However, case law in this Circuit establishes that no excessive force is used when a detainee is placed "in a restraint wrap, which was objectively reasonable under the circumstances after he resisted efforts to obtain information during the booking process and repeatedly refused to cooperate or answer intake questions." *Dickerson v. Wheelen*, 2022 U.S. Dist. LEXIS 44316, at *13 (S.D. Tex. 2022).[60] Thus, the Individual Defendants' actions were objectively reasonable under clearly established law and qualified immunity bars Plaintiffs' claims.

---

[60] *See also Holm v. Sassenhagen*, 2022 U.S. App. LEXIS 24138, at *6-7 (5th Cir. 2022) ("case law has not established that it is objectively unreasonable to bring to the ground and restrain a verbally and physically aggressive, unrestrained pretrial detainee after seeking compliance with verbal commands."); *Kelley v. Hamilton*, 2011 U.S. Dist. LEXIS 35851, 2011 WL 1298152, at *2 (W.D. Tex. Mar. 31, 2011) (concluding that an arrestee could not complain that jail officials took precautions to prevent suicide when he refused to answer booking questions about his mental state because "jail officials have an affirmative duty to protect [detainees] from harm and would have been derelict in their duties had they not taken proper precautions").

## C. Plaintiffs' Claims Against Sheriff Reynolds in his Individual Capacity Fail as a Matter of Law

39. Plaintiffs bring claims against Comal County Sheriff Mark Reynolds in his individual capacity. These claims fail as a matter of law, and should be resolved on summary judgment. For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). Indeed, personal involvement "is an essential element of a civil rights cause of action" asserted against an government employee in his individual capacity. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Here, Plaintiffs have not shown that Sheriff Reynolds was ***personally*** involved in any of the alleged constitutional violations. They have named Sheriff Reynolds as a defendant for both the excessive force and denial of medical care claims; however, Plaintiffs have alleged no facts to show that Sheriff Reynolds was personally involved with—or even aware of—Garrett's intake or the level of medical care. In the absence of such a showing, all of the Plaintiffs' claims against Sheriff Reynolds in his individual capacity fail.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Individual Defendants respectfully requests that, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court enter an order (i) granting this Motion for Summary Judgment; (ii) entering judgment on Plaintiffs' claims against the Individual Defendants in the Individual Defendants' favor; and (iii) for all such other relief, in law or equity, to which it may show itself justly entitled.

Respectfully submitted,

**MCGINNIS LOCHRIDGE LLP**
1111 West Sixth Street, Building B, Suite 400
Austin, Texas 78703
512.495.6000 (telephone)
512.495.6093 (telecopier)
mshaunessy@mcginnislaw.com
ejohnston@mcginnislaw.com
idavis@mcginnislaw.com

By: */s/ Michael Shaunessy*
　　MICHAEL SHAUNESSY
　　State Bar No. 18134550
　　IAN DAVIS
　　State Bar No. 24120793

*Attorneys for Defendants Comal County, Texas, Mark Reynolds individually and in his official capacity as Comal County Sheriff, Corrections Officer Orlando Mendoza, Corrections Officer Erik Romo, Corrections Officer Alberto Gonzalez, Corrections Officer Ashley Ozuna and Corrections Sergeant Thomas Garzareck*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 21st day of April, 2023, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and that the CM/ECF system will provide service of such filing via Notice of Electronic Filing to the following parties:

Tim Maloney
Eric Compolo
THE LAW OFFICES OF MALONEY & CAMPOLO
926 South Alamo Street
San Antonio, Texas 78205
tmaloney@maloneyandcampolo.com
ecampolo@maloneyandcampolo.com
*Attorneys for Plaintiffs*

Cory S. Reed
THOMPSON, COE, COUSINS & IRONS, L.L.P.
One Riverway, Suite 1400
Houston, Texas 77056
creed@thompsoncoe.com
*Attorneys for Defendant EMT Erica Rosales*

Christopher G. Rigler
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 North Pearl Street, 25th Floor
Dallas, Texas 75201
crigler@thompsoncoe.com
*Attorneys for Defendant EMT Erica Rosales*

/s/ *Michael Shaunessy*
MICHAEL SHAUNESSY