**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **LAURA GARRETT and MICHAEL GARRETT, SR., individually and as representatives of the Estate of Michael Garrett, Jr., Deceased,** | § § § § | |
| *Plaintiffs*, | § § | |
| **v.** | § § | |
| **COMAL COUNTY; MARK W. REYNOLDS, individually and as the Comal County Sheriff; OFFICER ORLANDO MENDOZA; OFFICER ERIK ROMO; OFFICER GONZALEZ; OFFICER OZUNA; EMT ERICA ROSALES; and SERGEANT THOMAS GARZARECK,** | § § § § § § § § § | **CASE NO. 5:21-CV-00803-JKP-RBF** |
| *Defendants*. | § | |

<u>**DEFENDANT COMAL COUNTY'S MOTION FOR SUMMARY JUDGMENT**</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE JASON K. PULLIAM:

      Defendants Comal County, Texas and Mark W. Reynolds, in his official capacity as the Comal County Sheriff[1] ("Sheriff Reynolds") (collectively, "Comal County"), file this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support thereof, Comal County would respectfully show as follows:

**I.**
**INTRODUCTION**

      1.    Laura Garrett and Michael Garrett, Sr., individually and as representatives of the Estate of Michael Garrett, Jr., Deceased, Plaintiffs in the above-styled and numbered cause

---

[1] An official capacity claim under 42 U.S.C. § 1983 is another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

("Plaintiffs"), asserts claims against Comal County under 42 U.S.C. § 1983 arising from Michael Garrett, Jr.'s ("Garrett") December 7, 2019 detainment at the Comal County Jail.

2. While Comal County extends its condolences to Garrett's family regarding the events that led to his death, the facts and evidence surrounding Garrett's December 7, 2019, criminal detention in the Comal County Jail do not give rise to government liability under 42 U.S.C. § 1983. As a matter of law, Plaintiffs are unable to establish a violation of Garrett's constitutional rights, or that a Comal County policy or practice was a moving force behind any constitutional violation. For the reasons set forth below, summary judgment should be entered in Comal County's favor.

## II.
### STATEMENT OF MATERIAL FACTS

3. Pursuant to Local Rule CV-7(c), Comal County submitting an appendix that outlines the material facts relied upon to support this Motion for Summary Judgment.

## III.
### SUMMARY JUDGMENT EVIDENCE

4. In support of this Motion for Summary Judgment, Comal County relies upon the following summary judgment evidence:[2]

|          |                                                      |
|----------|------------------------------------------------------|
| Exhibit A | Affidavit of Major Adrian Delgado                   |
| Exhibit B | Affidavit of Ian Davis                              |
| Exhibit C | Christus Santa Rosa Health System Discharge Summary |
| Exhibit D | Garrett's Certificate of Death                      |
| Exhibit E | Affidavit of Alberto Gonzalez                       |
| Exhibit F | Affidavit of Michael Martinez                       |
| Exhibit G | Affidavit of Ashley Ozuna                           |
| Exhibit H | Affidavit of Orlando Mendoza                        |
| Exhibit I | Affidavit of Nelda Delgado                          |
| Exhibit J | Affidavit of Thomas Garzareck                       |
| Exhibit K | Thomas Garzareck Deposition Excerpts                |
| Exhibit L | Inadvertently Omitted                               |
| Exhibit M | Affidavit of Julian Rodriguez                       |

---

[2] Exhibits A, B, and I contain sub-exhibits. Each corresponding affidavit contains a list of all sub-exhibits.

| | |
|---|---|
| Exhibit N | Affidavit of Ryan Gonzales |
| Exhibit O | Texts |
| Exhibit P | Laura Garrett Deposition Excerpts |
| Exhibit Q | New Braunfels Fire Department Records |
| Exhibit R | Michael Garrett, Sr., Deposition Excerpts |
| Exhibit S | New Braunfels Fire Department Records |
| Exhibit T | Excerpts from Phoenix House Medical Records |
| Exhibit U | Excerpts from San Patricio County Sheriff's Office Arrest Records |
| Exhibit V | Excerpts from Coastal Plains Community Center Medical Records |
| Exhibit W | Excerpts from Hill Country MHDD Center |
| Exhibit X | Affidavit of Joshua Smerk |
| Exhibit Y | Stacy Sinner Deposition Excerpts |
| Exhibit Z | Sheriff Mark Reynolds Deposition Excerpts |
| Exhibit AA | EMT Erica Rosales Deposition Excerpts |
| Exhibit BB | Chun Chiang DepositionExcerpts |
| Exhibit CC | The WRAP Application Manual |

## IV.
### SUMMARY JUDGMENT STANDARD

5.     Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue of material fact, and the moving party demonstrates it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. An issue is not "genuine" when there is nothing more than "some metaphysical doubt as to the material facts." *Matsushita Elect. Indust. Co. v. Zenith Radio,* 475 U.S. 547, 586 (1986).

6.     In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 378 (2007). Factual controversies are resolved in favor of the nonmoving party, "but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.,* 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted). "When opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380. "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence*." Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted).

## V.
### *MONELL* STANDARD OF MUNICIPAL LIABILITY

7.        "To establish municipal liability (a '*Monell* claim') under § 1983, 'a plaintiff must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy.'" *Hutcheson vs. Dallas Cty.,* 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010)). To prevail against Comal County, Plaintiffs must therefore establish "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Id.* (quoting *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002)). Under a *Monell* claim, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Bd. of County Commissioners v. Brown*, 520 U.S. 397, 405 (1997); *see also Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (governmental entities never liable on "theory of respondeat superior" and "almost never liable for an isolated unconstitutional act [by] employee.").

## IV.
### ARGUMENTS AND AUTHORITIES

8.        Pursuant to 42 U.S.C. § 1983, Plaintiffs claim that Comal County violated Garrett's constitutional rights under the Fourteenth Amendment to the U.S. Constitution.[3] Specifically,

---

[3] *See* Dkt. 48, ¶¶ 91–116; 117–24.

Plaintiffs allege that Comal County denied Garrett adequate medical care and failed to adequately train its officers on: (1) monitoring intoxicated detainees; (2) recognizing a drug-related emergency ("DRE"); and (3) use of the WRAP restraint.[4] Additionally, Plaintiffs allege that Comal County failed to supervise its officers.[5] Because Plaintiffs are unable to show that Garrett's constitutional rights were violated under these claims, Comal County is entitled to summary judgment. Moreover, even if this Court finds that Garrett's rights were violated, summary judgment is nonetheless appropriate because Plaintiff cannot establish that a Comal County policy or practice was the moving force behind any such violation.

**A.      Government Liability Requires an Underlying Constitutional Violation**

9.      The Fifth Circuit has "stated time and again" that "without an underlying constitutional violation, an essential element of municipal liability is missing." *Doe v. Covington County Sch. Dist.,* 675 F.3d 848, 867 (5th Cir. 2012) (quoting *Becerra v. Asher,* 105 F.3d 1042, 1048 (5th Cir. 1997)). As argued more fully in the Comal County Individual Defendants' Motion for Summary Judgment, Garrett did not suffer a constitutional violation as a matter of law. *See* Dkt. 61. Therefore, in addition to the reasons set forth below, summary judgment should be entered in favor of Comal County. *See Bedingfield v. Deen,* 487 Fed. Appx. 219, 229 (5th Cir. 2012) (affirming summary judgment for sheriff in his official capacity when "Plaintiffs did not create a genuine issue of material fact regarding" infliction of constitutional violation).

**B.      Comal County Is Entitled to Summary Judgment on Plaintiffs' Failure to Train Claims**

**i.      Element 1: Plaintiffs Cannot Establish an Official Policy, Practice or Custom**

---

[4] *See* Dkt. 48, ¶ 105.
[5] *See* Dkt. 48, ¶¶ 117–24.

10. Under *Monell's* first element, Plaintiffs must raise a fact dispute over whether an official policy or custom existed that led to a constitutional violation. *See Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021). An "official policy" for purposes of § 1983 includes: (1) "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority;" and (2) a persistent and widespread practice of city officials or employees, "which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Brown v. Bryan Cty.*, *OK*, 219 F.3d 450, 457 (5th Cir. 2000); *see also Connick v. Thompson,* 563 U.S. 51, 61 (2011).

11. Here, Plaintiffs do not allege that Comal County had an official written policy that led to a constitutional violation. Rather, Plaintiffs allege that Comal County's supposed practices amount to de facto policies that led to a constitutional injury.[6]

12. Establishing an official policy through pattern or practice requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). A pattern thus requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). Here, Plaintiffs allege that Comal County is liable for failing to adequately train its officers on: (1) monitoring intoxicated detainees; (2) recognizing a DRE; and (3) use of the WRAP Restraint.[7] As explained below, Plaintiffs cannot show a de facto policy under this element, and summary judgment should be entered.

---

[6] *See* Dkt. 48, ¶ 105.
[7] *See* Dkt. 48, ¶ 105.

13.     Establishing municipal liability for a failure to train is a difficult task. *See Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). The failure to train can amount to a de facto policy **<u>only</u>** if there is **<u>deliberate indifference</u>** to an obvious need for training where citizens are likely to lose their constitutional rights accordingly. *See Brown*, 219 F.3d at 458; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). In determining municipal liability based on inadequate training, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Harris*, 489 U.S. at 390.

14.     There are two means of establishing deliberate indifference for failure-to-train claims, which has been extended to failure-to-supervise claims. *See Littell v. Houston Indep. Sch. Dist.,* 894 F.3d 616, 624 (5th Cir. 2018) (citing *Harris*, 489 U.S. at 386-92). First, if a violation occurs "so often" that a factfinder can infer from the pattern of violations that "the need for further training must have been plainly obvious to the . . . policymakers." *Harris*, 489 U.S. at 390 n.10. This "proof-by-pattern method is 'ordinarily necessary'" to prove deliberate indifference. *Littell,* 894 F.3d at 624 (citing *Brown*, 520 U.S. at 409).

15.     Here, Plaintiffs neither allege nor can they offer evidence of any previous incidents at the Comal County Jail regarding the alleged misuse of WRAP Restraints, failure to monitor intoxicated detainees, or failure to recognize a DRE; thus, Plaintiffs cannot survive summary judgment on a proof-by-pattern finding of deliberate indifference to inadequate training. *See Garza v. City of Donna*, 922 F.3d 626, 638 (5th Cir. 2019) (plaintiffs "put forward no evidence of a pattern of violations stemming from deficient training, so their case depends on the single-incident method of demonstrating deliberate indifference").

16.     The second means of proving deliberate indifference for failure-to-train and failure-to-supervise claims is the "single incident exception" where deliberate indifference can be inferred if the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003). The Supreme Court has held that the "single-incident" exception applies "[i]n a narrow range of circumstances[.]" *Connick v. Thompson,* 563 U.S. 51, 63 (2011).

17.     To establish *Monell* liability under a single-incident exception, a plaintiff must establish "that the training provided by the municipality was so inadequate that it should have predicted that those deficiencies would have caused the specific harm alleged, ***not that more or different training would have prevented it***."[8] It is not sufficient to show that an injury or accident could have been avoided if the employee had more or better training.[9] Moreover, the Fifth Circuit has concluded that the single-incident exception "is generally reserved for those cases in which the government actor was provided ***no training whatsoever***." *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) (emphasis added).

18.     One officer's unsatisfactory training will not establish municipal liability, because that individual's shortcomings or mistakes may have been caused by factors other than a deficient training program. *See Harris*, 489 U.S. at 390-91. Critically, evidence that a county's training program complied with state law is also a factor that weighs against a finding of failure to train. *See Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 171 (5th Cir. 2010) (citing *Conner v. Travis Cnty.*, 209 F.3d 794, 798 (5th Cir. 2000)).

---

[8] *Hutcheson v. Dallas Cnty.*, No. 3:17-cv-2021-BN, 2020 WL 1692950, at *6 (N.D. Tex. Apr. 7, 2020), *aff'd*, 994 F.3d 477 (5th Cir. 2021) (emphasis added).
[9] *See Canton*, 489 U.S. at 391.

19.     First and foremost, Comal County has policies in place for the safe detainment of inmates.[10] All Comal County COs meet state standards for training to obtain state certification and additional training are required to maintain certification.[11] Additionally, Comal County COs are provided substantial training on the topics at issue. With respect to the WRAP Restraint, Comal County COs are trained on the safe and effective use of WRAP Restraints upon hire by a WRAP certified instructor.[12] Comal County also provides WRAP Restraint field training on an ad hoc basis.[13] With respect to recognizing a DRE, all Comal County COs must complete the Texas Commission on Law Enforcement's ("TCOLE") 120-hour Basic County Corrections Course.[14] Several training topics touch on drug-related symptoms.[15] More importantly, pursuant to Comal County policy, at least two (2) medical professional personnel (such as EMT Rosales and RN Floyd) are on site 24 hours a day to evaluate inmates (including taking vital signs), provide medical treatment and identify medical emergencies that require treatment at hospital or other medical facilities.[16] Finally, with respect to monitoring intoxicated detainees, COs are trained to conduct 15-minute checks to confirm that the inmate is safe and to determine whether they are in need of medical consultation with one of the Jail's medical staff.[17] COs are further trained to notate their 15-minute checks on a 15 Minute Check Report Sheet.[18]

20.     Simply put, this record is inadequate to support a failure-to-train theory. *See Benavides v. Cnty of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992) (no liability absent a showing that

---

[10] *See* Exhibit X, ¶¶3, 4, 5, 6.
[11] *See* Exhibit X, ¶6.
[12] *See* Exhibit X, ¶6; *see also* WRAP Application Manual, attached hereto as Exhibit CC (hereinafter "Exhibit CC").
[13] *See* Exhibit X, ¶6.
[14] *See* Exhibit X, ¶11.
[15] *See* Exhibit X, ¶¶11, 12, 13, 14, 15; *see also* Sheriff Mark Reynolds Deposition Excerpts, attached hereto as Exhibit Z (hereinafter "Exhibit Z"), p. 29, l. 10 – p. 30, l. 11, p. 31, ll. 6-22.
[16] *See* Exhibit J, ¶3.
[17] *See* Exhibit X, ¶17.
[18] *See* Exhibit X, ¶18.

the "legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers").[19]

21.     The Seventh Circuit's decision in *Palmquist v. Selvik* is instructive. *See* 111 F.3d 1332 (7th Cir. 1997). In *Palmquist*, police officers were allegedly not trained to deal with "abnormally behaving" individuals. *See id.* at 1345. The Seventh Circuit found that the plaintiff failed to establish inadequate training because, while there was no special training on how to deal with such individuals, a rule of "no special training = deficient training" must be rejected because it "would ignore the training the officers did receive … [in] basic recruit training . . ." *Id.* at 1345. The Plaintiffs here have also ignored the training that all Comal County COs officers received. As the summary judgment record establishes, the TCOLE-mandated 120-hour Basic County Corrections Course addresses intoxication and conducting an inmate evaluation during a check, two of the training topics at issue.[20] Comal County provides training on use of the WRAP Restraint, which is another training topic about which Plaintiff's complain.

22.     Taken together, Plaintiffs cannot raise a genuine issue of material fact on the first element of their failure-to-train claims and summary judgment should be granted.

ii.     **Element 2: Plaintiffs Cannot Establish Actual or Constructive Knowledge**

23.     Under *Monell's* second element, Plaintiffs must raise a fact dispute over whether a policymaker actually or constructively knew that Comal County's training programs were

---

[19] Moreover, Plaintiffs have not alleged and cannot offer any "proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights"—*i.e.* the population that passes through Comal County's jail or about the jail's operations from which the possibility of recurring situations threatening to constitutional rights might be assessed. *Garza v. City of Donna*, 922 F.3d 626, 638 (5th Cir. 2019). For example, Plaintiffs have not offered any evidence on the frequency with which detainees are placed in WRAP Restraints. Nor have they offered evidence establishing the frequency with which Comal County detainees suffer from DREs during intake. Therefore, even reading the facts in the light most favorable to Plaintiffs, Comal County did not engage in a "deliberate" or "conscious" choice to disregard the "highly predictable" consequences of its policy decision. *See Rhyne v. Henderson Cty.,* 973 F.2d 386, 392 (5th Cir. 1992).
[20] *See* Exhibit X, ¶11.

constitutionally infirmed. *See Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021). "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information." *Bennet v. City of Slidell,* 728 F.2d 762, 768 (5th Cir. 1984) (en banc). Constructive knowledge can be attributed to a policymaker "on the ground that [he] would have known of the violations if [he] had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion." *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002).

24.     Plaintiffs have neither alleged nor can they establish that Comal County's policymaker had actual knowledge of the pattern of allegedly unconstitutional conduct. Rather, read most favorably, Plaintiffs allegations seem to rely on a supposed widespread practice sufficient to impute constructive knowledge on the policymaker. Yet, Plaintiffs have provided no evidence that the allegedly unconstitutional practices were the "subject of prolonged discussion or of a high degree of publicity." *Bennet,* 728 F.2d at 768.[21] They cannot offer evidence of any circumstances in which a Comal County detainee suffered a loss of constitutional rights because of inadequate training or supervision with respect to the alleged use of WRAP restraints, identification of DRE, and proper monitoring practices in the Comal County Jail. Thus, Plaintiffs' attempt to hold Comal County liable is functionally the respondeat superior regime that the Supreme Court has repeatedly rejected. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997) ("To prevent municipal liability . . . from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged").

---

[21] *See also McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir. 1989) ("Sufficiently numerous prior incidents of police misconduct, for example, may tend to prove a custom and accession to that custom by the municipality's policymakers. Isolated instances, on the other hand, are inadequate to prove knowledge and acquiescence by policymakers.").

### iii. Element 3: Plaintiffs Cannot Establish a Causal Link Between the Allegedly Unconstitutional Policies and Garrett's Death

25.     Assuming, *arguendo*, that Comal County was somehow deficient in providing its officers proper training, Plaintiffs must still demonstrate how the failure to provide specific training had a causal nexus with Garrett's death. Thus, to overcome summary judgment, Plaintiffs must present some evidence that a failure to train was a "moving force" behind the alleged constitutional violation. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Harris*, 489 U.S. at 391 ("For liability to attach . . . the identified deficiency in the city's training program must be closely related to the ultimate injury."). Under Supreme Court precedent, the critical question is: "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id*.

26.     Here, Plaintiffs cannot raise a fact issue regarding causation. All of the Comal County COs are trained and it's a policy of the Sheriff's Office that if there is a question about an inmate's condition, then they should consult with one of the medical professionals working in the jail.[22] EMT Rosales—the medical professional who attended to Garrett during intake and saw him in two other instances never recommended that Garrett needed to go to a hospital.[23] Additionally, RN Floyd, who also worked in the Jail and attended to Garrett did not indicate that Garrett needed to be taken to the hospital.[24] Neither EMT Rosales nor Nurse Floyd ever indicated to the COs that based on what they observed evidenced that Garrett had ingested drugs.[25] Like the COs, EMT Rosales concluded that Garrett was suffering from an anxiety attack.[26] Dr. Chiang (Rosales' expert) as well as Plaintiffs' medical expert both testified that Garrett's symptoms were consistent

---

[22] *See* Exhibit J, ¶4.
[23] *See* EMT Rosales Deposition Excerpts, attached hereto as Exhibit AA (hereinafter "Exhibit AA"), p. 34, ll. 1-14.
[24] *See* Exhibit A-4 at 19:55; *see also* Exhibit A-11; Exhibit I-2; Exhibit I-1; Exhibit I-2.
[25] *See* Exhibit AA, p. 60, ll. 2-11.
[26] *See* Exhibit AA, p. 47, ll. 5-10.

with an anxiety attack.[27] Like counties across the nation, Comal County trains its COs to bring matters to the attention of professional medical staff to evaluate whether an inmate's condition constitutes a medical emergency that requires medical treatment beyond what can be provided in a jail setting.[28] Therefore, even assuming that Comal County COs were deficiently trained in recognizing a DRE (they were not), there is nothing in the record to suggest that such a deficiency was the moving force behind Garrett's death.

### C. Comal County is Entitled to Summary Judgment on Plaintiffs' Denial of Medical Care Claim

27.     Plaintiffs also seek to hold Comal County liable on a denial of medical care claim.[29] Under the due process clause of the Fourteenth Amendment, government entities owe "pretrial detainees . . . [a duty to provide] basic human needs, including medical care." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 650 (5th Cir. 1996) (en banc). Courts in the Fifth Circuit determine the legal standard used to measure the due process rights of pretrial detainees based on whether the detainee (1) challenges the constitutionality of a condition of his confinement, or (2) whether he challenges an episodic act or omission of an individual government official. *See id.* at 644–45.

### i.     Plaintiffs' Conditions of Confinement Claim Fails as a Matter of Law

28.     A challenge to a condition of confinement is a challenge to "general conditions, practices, rules of restrictions of pretrial confinement." *Id.* at 644. "To establish the first prong, a detainee challenging jail conditions must show more than an isolated incident; he 'must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs.'" *Edler v. Hockley Cty. Comm'rs Court*, 589 Fed. Appx. 664, 668 (5th Cir. 2014) (citation

---

[27] *See* Chun Chiang Deposition Excerpts, attached hereto as Exhibit BB (hereinafter "Exhibit BB"), p. 52, ll. 3-16, p. 72, ll. 11-22; *see also* Exhibit Y, p. 46, l. 24 – p. 47, l. 9, p. 65, l. 1 – p. 67, l. 3.
[28] *See* Exhibit J, ¶4.
[29] *See* Dkt. 48, at V.

omitted).[30] Here, Plaintiffs' condition of confinement claim related to medical care fails as a matter of law. Plaintiffs cannot offer any evidence to establish that Comal County had a "pervasive pattern of serious deficiencies in providing for" all of its detainees' basic medical needs. *See id.* Indeed, Plaintiffs' First Amended Complaint makes no reference to any incidents or conditions beyond those related to Garrett's December 7, 2019, detainment at the Comal County Jail. Without any such allegation or evidence, Plaintiffs cannot succeed on a conditions of confinement theory. *See, e.g., Brown*, 409 Fed. Appx. at 731.

### ii. Plaintiffs' Episodic Acts or Omissions Claim Fails as a Matter of Law

29.    In contrast to conditions of confinement claim, an episodic-acts-or-omissions claim "faults specific jail officials for their acts or omissions." *Shepherd v. Dall. Cty.*, 591 F.3d 445, 452 (5th Cir. 2009); *see also Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) ("[W]here the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an 'episodic act or omission' case").

30.    In an episodic-act-or-omission case against a government entity, "an actor is usually interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Flores v. Cty. of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997). To succeed in holding a government entity liable, a plaintiff must demonstrate an employee's ***subjective indifference*** and additionally that the employee's act "resulted from a municipal policy or custom adopted or maintained with ***objective***

---

[30] The Fifth Circuit has routinely rejected conditions of confinement claims where the evidence does not show a systematic policy or failure. *See, e.g., Brown v. Harris County*, 409 Fed. Appx. 728, 731 (5th Cir. 2010) (classifying a "brutal" sexual assault as an episodic claim where the court found no evidence that sexual assaults were common in the jail and despite evidence of jail overcrowding introduced by the plaintiff); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (holding that an allegation that officers failed to screen and secure treatment for an asthmatic detainee "fits the definition of the episodic omission").

*deliberate indifference* to the detainee's constitutional rights." *Hare*, 74 F.3d at 649 n. 4 (citing

*Farmer v. Brennan,* 511 U.S. 825 (1994)). Thus, to withstand summary judgment on their episodic

acts claim, Plaintiffs must show a genuine fact issue that (1) a Comal County employee's

*subjective deliberate indifference* resulted in a constitutional violation, *see Hare,* 74 F.3d at 649

n.14, and (2) with *objective deliberate indifference*, a final policymaker "implement[ed]

unconstitutional policies that causally result[ed] in the constitutional injury." *Porter v. Eppis,* 659

F.3d 440, 446 (5th Cir. 2011).

31.     Deliberate indifference is "is an extremely high standard to meet." *Domino v. Tex.

Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001). It requires evidence that: "(1) the

official was aware of facts from which an inference of substantial risk of serious harm could be

drawn; (2) the official actually drew that inference; and (3) the official's response indicates the

official subjectively intended that harm occur." *Thompson v. Upshur Cty*., 245 F.3d 447, 458-59

(5th Cir. 2001).[31] Here, Plaintiffs cannot raise a fact issue that any of the COs was subjectively

aware that Garrett faced a "substantial risk of serious harm" or that any COs disregarded that risk

"by failing to take reasonable measure to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

32.     Throughout his intake at the Comal County Jail, Garrett repeatedly denied having

ingested drugs.[32] Garrett never requested to go to a hospital, and never even requested medical

attention. To the contrary, he rebuffed medical personnel's numerous attempts to provide medical

---

[31] *See also Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001) ("To prove deliberate indifference, [an inmate] must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety"); *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (deliberate indifference requires that an official both know the pretrial detainee faces "a substantial risk of serious harm" and disregard "that risk by failing to take reasonable measures to abate it.").
[32] *See* Exhibit A-18 at 02:15; *see also* Exhibit A-4 at 01:15 through 06:45, 12:00; Exhibit I-1, pp. CCSO003736, CCSO003737, CCSO003738; Exhibit I-2. Although the NBPD officer who talked with Michael during his arrest (Sergeant Akers) expressed a concern that Michael had ingested drugs prior to his arrest, Sergeant Akers never passed along this information to Comal County employees. *See* Exhibit B-2 at 43:10, 17:20, 45:30, 1:17:15; *see also* Exhibit B-3 at 11:35; Exhibit B-4 at 15:35; Exhibit A-4 at 00:01.

care.[33] Garrett selectively answered certain questions, showing that was capable of understanding the officers.[34] Specifically, Garrett answered "yes" when officers and medical staff asked him whether he had anxiety and "no" when asked if he had ingested drugs.[35] Garrett also asked the officers questions on his own volition and even made an affirmative request for water (which the officers brought him).[36]

33.     Garrett was only became, was breathing hard, and became more non-compliant with the officers' directives when the officers told Garrett they needed him to remove his underwear in order to conduct a strip search.[37] At no point did Garrett's physical symptoms become so severe that the Individual Defendants were subjectively aware that Garrett could potentially be having a DRE.[38] In fact, EMT Rosales—one of the medical professionals on the scene—specifically determined that Garrett was having an anxiety attack, which was consistent with Garrett's answers to intake questioning.[39] On that basis, it was determined that Garrett was not in need of emergency medical intervention.[40]

34.     Moreover, on several occasions, medical staff attempted to conduct a medical screening on Garrett.[41] Garrett selectively answered medical screening questions.[42] On several occasions, he indicated that he had not ingested any drugs and refused to answer any questions regarding substance abuse.[43] Critically, Garrett refused medical staff's attempts to check his

---

[33] *See* Exhibit I-1; *see also* Exhibit I-2; Exhibit 1-3.
[34] *See* Exhibit I-1.
[35] *See* Exhibit A-10 at 02:15; *see also* Exhibit I-1, p. CCSO003737.
[36] *See* Exhibit A-4 at 09:50, 10:30, 16:10; *see also* Exhibit A-49 at 03:10, 05:25; Exhibit A-12 at 01:40 through 10:45.
[37] *See* Exhibit A-12 at 01:40; *see also* Exhibit A-13; Exhibit A-15; Exhibit A-16; Exhibit A-17; Exhibit A-19 at 04:12, 04:55; Exhibit A-50 at 00:01.
[38] *See* Exhibit A, ¶9; *see also* Exhibit E, ¶¶6, 8; Exhibit F, ¶¶3, 5; Exhibit G, ¶¶4, 6; Exhibit H, ¶¶7, 9; Exhibit J, ¶¶4, 7; Exhibit N, ¶6; Exhibit Y, p. 56, ll. 4-10.
[39] *See* Exhibit A-52 at 02:22.
[40] *See* Exhibit E, ¶7; *see also* Exhibit F, ¶4; Exhibit G, ¶5; Exhibit H, ¶10.
[41] *See* Exhibit A-13; *see also* Exhibit A-18 at 01:20; Exhibit A-52 at 00:30; Exhibit I-1; Exhibit I-2.
[42] *See* Exhibit A-13; *see also* Exhibit A-18 at 01:20; Exhibit A-52 at 00:30; Exhibit I-1; Exhibit I-2.
[43] *See* Exhibit A-18 at 02:15; *see also* Exhibit A-4 at 01:15 through 06:45, 12:00; Exhibit I-1, pp. CCSO003736, CCSO003737, CCSO003738; Exhibit I-2.

vitals.[44] Even when Sergeant Garzareck Spoke with Garcas (who was arrested and brought into the jail with Garrett) if Garrett had ingested any drugs, Garcas told him that he didn't know if Garrett had taken any drugs but that he did have a problem with anxiety.[45] Based on the facts and circumstances surrounding Garrett's intake, the evidence establishes that the Individual Defendants were not subjectively aware that Garrett faced a substantial risk of serious harm. *See, e.g., Roberts v. Lessard,* 841 Fed. Appx. 691, 694 (5th Cir. Jan. 20, 2021) (no deliberate indifference when officers observed plaintiff sweating, slurring speech and having trouble controlling movement because no evidence that "Defendants actually drew the inference that [plaintiff] was suffering from a medical condition that presented a serious risk of harm").[46] Indeed, *even Plaintiffs' expert witness agrees* that the COs did not have actual subjective awareness that Garrett had taken drugs.[47] Ultimately, the failure to realize that Garrett had ingested a lethal amount of methamphetamine negates any claim of deliberate indifference.[48]

---

[44] *See* Exhibit A-13; *see also* Exhibit A-18; Exhibit A-52 at 00:30; Exhibit I-1, pp. CCSO003736, CCSO003737, CCSO003738; Exhibit I-2.

[45] *See* Exhibit A-16.

[46] *See also Montano v. Orange Cty.,* 2015 U.S. Dist. LEXIS 180277, at *25–26 (E.D. Tex. Apr. 13, 2015) (holding no deliberate indifference even when record contained evidence that officer "may have misdiagnosed [plaintiff] in assuming that he was intoxicated" because "subjective deliberate indifference cannot be inferred from a negligent, or even grossly negligent, response to a substantial risk of serious harm.").

[47] Sinner Depo, at 40/13-23. Further, there is no evidence in the record establishing that the New Braunfels PD arresting officers informed any of the Individual Defendants that Garrett may have ingested a large quantity of drugs.

[48] The Individual Officers' actions were also reasonable. *See Brown*, 623 F.3d at 253 ("If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'"). The Individual Defendants repeatedly attempted to have Garrett undergo a medical screening. Yet he refused. Thus, it is objectively reasonable for the Individual Officers to restrain Garrett and let an intoxicated detainee to sober up, with periodic monitoring to safeguard his well-being. *See Estate of Allison v. Wansley,* 524 Fed. Appx. 963, 972 (5th Cir. May 15, 2013). As the Fourth Circuit has aptly stated:

> [The deceased inmate's] symptoms hardly distinguish him from the multitude of drug and alcohol abusers the police deal with everyday. [The deceased inmate] was found in possession of drugs while acting irrationally and slurring his speech. However, an officer could hardly be faulted under [*Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)] for believing that [the deceased inmate] needed nothing so much as to sleep it off. To accept appellant's claim would be to mandate as a matter of constitutional law that officers take all criminal suspects under the influence of drugs or alcohol to hospital emergency rooms rather than detention centers. That would be a startling step to take.

35.     Without the first element, Plaintiffs cannot succeed on their episodic acts claim against Comal County. *See Anderson v. Dallas County, Tex.,* 286 Fed. Appx. 850, 860 (5th Cir. 2008) (citing *City of L.A. v. Heller,* 475 U.S. 796, 799 (1986)) ("If a plaintiff is unable to show that a county employee acted with subjective deliberate indifference, the county cannot be held liable for an episodic act or omission"). But, even assuming that Plaintiffs could, they cannot raise a genuine dispute of material fact on the second element: that Sheriff Reynolds acted with objective deliberate indifference and "implament[ed] unconstitutional policies that causally result[ed] in the constitutional injury." *Porter,* 659 F.3d at 446.

36.     A government entity acts with objective deliberate indifference if a final policymaker promulgates (or fails to promulgate) a policy or custom despite "the 'known or obvious consequences' that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997)). "In addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation." *Id.* at 580. The policy or custom must have been the "moving force" behind the constitutional violation. *See Forgan v. Howard County*, 494 F.3d 518, 522 (5th Cir. 2007).

37.     Plaintiffs cannot offer any evidence to show that Comal County has a de facto policy of denying adequate medical care to its detainees. On the contrary, Comal County has offered extensive evidence of its policies on the provision of medical care, including having multiple medical professionals in the jail to evaluate inmates and determine necessary treatment at all times.[49]

---

*Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999).
[49] *See* Exhibit J, ¶3, 4.

38.     Here, the Individual Defendants consulted with medical personnel on multiple occasions to determine how best to safely and securely process Garrett's intake.[50] Based on the facts and circumstances, EMT Rosales determined that Garrett was suffering from an anxiety attack (indeed, Garrett told EMT Rosales and officers that he had anxiety).[51] On that basis, it was determined that Garrett was not in need of emergency medical attention.[52] The Individual Defendants relied on EMT Rosales' determination.[53] And, had EMT Rosales or RN Floyd recommended that Garrett be taken to the hospital, such a course of action would have been taken.[54] Corrections officers are not medical professionals, nor are they expected to be.[55] That is why the Comal County Jail has medical personnel present 24-hours a day.[56] If medical personnel recommend emergency medical attention, COs rely on that recommendation.[57] But here, EMT Rosales determined that Garrett was not in need of medical attention, and the COs acted accordingly.[58]

39.     The bottom line is that Plaintiffs cannot meet the "extremely high standard" of deliberate indifference. *See Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001). It is well-settled that deliberate indifference cannot be inferred merely from a negligent or even grossly negligent response to a substantial risk of serious harm. *See Hare v. Corinth,* 74 F.3d 633, 645, 649–50 (5th Cir. 1996) (en banc). The summary judgment record does not establish that

---

[50] *See* Exhibit A-4; *see also* Exhibit A-11; Exhibit A-12; Exhibit A-18; Exhibit A-19; Exhibit 20; Exhibit 51; Exhibit A-52.
[51] *See* Exhibit A-52 at 02:22l; *see also* Exhibit I-1. Garrett's cousin, John Paul Garces, also told Sergeant Garzareck that Garrett struggled with anxiety prior to Garrett's placement in the WRAP Restraint. *See* Exhibit A-16.
[52] *See* Exhibit E, ¶7; *see also* Exhibit F, ¶4; Exhibit G, ¶5; Exhibit H, ¶10.
[53] *See* Exhibit J, ¶4.
[54] *See* Exhibit J, ¶4.
[55] *See* Exhibit A, ¶8; *see also* Exhibit I, ¶10; Exhibit J, ¶3;
[56] *See* Exhibit J, ¶3.
[57] *See* Exhibit J, ¶4.
[58] *See* Exhibit A-4; *see also* Exhibit A-11; Exhibit A-12; Exhibit A-18; Exhibit A-19; Exhibit 20; Exhibit 51; Exhibit A-52.

the CCSO officers were subjectively aware that Garrett faced a substantial risk of serious harm. Nor does it establish that Comal County had a de facto policy of failing to provide medical care to its detainees. For these reasons, Plaintiffs' claims against Comal County regarding medical care cannot survive summary judgement.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants Comal County, Texas and Mark Reynolds, in his official capacity as the Sheriff of Comal County, respectfully request that the Court grant this Motion for Summary Judgment and enter judgment in their favor on Plaintiffs' claims against them. Defendants further pray for all such other relief, in law or equity, to which they may show themselves justly entitled.

Respectfully submitted,

**MCGINNIS LOCHRIDGE LLP**
1111 West Sixth Street, Building B, Suite 400
Austin, Texas 78703
512.495.6000 (telephone)
512.495.6093 (telecopier)
mshaunessy@mcginnislaw.com
idavis@mcginnislaw.com

By:     /s/ Michael Shaunessy
        MICHAEL SHAUNESSY
        State Bar No. 18134550
        IAN DAVIS
        State Bar No. 24120793

*Attorneys for Defendants Comal County, Texas, Mark Reynolds individually and in his official capacity as Comal County Sheriff, Corrections Officer Orlando Mendoza, Corrections Officer Erik Romo, Corrections Officer Alberto Gonzalez, Corrections Officer Ashley Ozuna and Corrections Sergeant Thomas Garzareck*

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that, on the 21st day of April, 2023, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and that the CM/ECF system will provide service of such filing via Notice of Electronic Filing to the following parties:

   Tim Maloney
   Eric Compolo
   THE LAW OFFICES OF MALONEY & CAMPOLO
   926 South Alamo Street
   San Antonio, Texas 78205
   tmaloney@maloneyandcampolo.com
   ecampolo@maloneyandcampolo.com
   ***Attorneys for Plaintiffs***


   Christopher G. Rigler
   THOMPSON, COE, COUSINS & IRONS, L.L.P.
   700 North Pearl Street, 25th Floor
   Dallas, Texas 75201
   crigler@thompsoncoe.com
   ***Attorneys for Defendant EMT Erica Rosales***

   Cory S. Reed
   THOMPSON, COE, COUSINS & IRONS, L.L.P.
   One Riverway, Suite 1400
   Houston, Texas 77056
   creed@thompsoncoe.com
   ***Attorneys for Defendant EMT Erica Rosales***


         */s/ Michael Shaunessy*
         MICHAEL SHAUNESSY
         IAN DAVIS